# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| |
|---|
| Federal Trade Commission *et al.*, |
| Plaintiffs, |
| v. |
| Chase Nissan, LLC, *et al.*, |
| Defendants. |

Civil No. 3:24-cv-00012 (JCH)

July 29, 2024

## RULING AND ORDER ON
## DEFENDANTS' MOTION TO COMPEL [ECF No. 48]

The Defendants, Chase Nissan LLC, Patrick Dibre, Refaat Soboh, Michael Hamadi, Matthew Chmielinski, and Fred Mojica (together, "Defendants") have moved the Court for an order compelling the Plaintiff, State of Connecticut ("State"), to produce two classes of documents. (ECF No. 48.)  First, the Defendants seek production of the State's "notes and memoranda from communications with consumers."  (ECF No. 48-1, at 4.)  Second, they seek "documents related to [the] State's damages claim."  (*Id.* at 8.)  The Defendants also fault the State for asserting improper "general objections," and they ask the Court to order them withdrawn.  (*Id.* at 10.)

The presiding District Judge, the Hon. Janet C. Hall, referred the matter to the undersigned for a resolution.  (ECF No. 49.)  The motion is fully briefed (ECF Nos. 48-1, 55),[1] and the Court heard extensive oral argument on June 28, 2024.  (ECF No. 61.)  For the following reasons, the Defendants' motion will be **GRANTED IN PART AND DENIED IN PART** as set forth more fully in Section III below.

---

[1]     Although the motion seeks relief only with respect to the State, the other Plaintiff – the Federal Trade Commission ("FTC") – also submitted a brief.  (ECF No. 56.)

I.   FACTUAL BACKGROUND

Chase Nissan, LLC operates the "Manchester City Nissan" car dealership in Manchester, Connecticut.  (Am. Compl., ECF No. 18, ¶ 8.)   The defendants Patrick Dibre and Refaat Soboh are alleged to be principals and managing members of the LLC.  (*Id.* ¶¶ 9-10.)  Michael Hamadi is Manchester City Nissan's general manager (*see id.* ¶ 11 and Ans., ECF No. 32, ¶ 11), Matthew Chmielinksi is its former sales manager (*see* Am. Compl., ECF No. 18, ¶ 13 and Ans., ECF No. 32, ¶ 13), and Fred Mojica is its current sales manager.  (*See* Am. Compl., ECF No. 18, ¶ 14 and Ans., ECF No. 32, ¶ 14.)

The State alleges that the Defendants violated the Connecticut Unfair Trade Practices Act ("CUTPA") by, among other things, misrepresenting the prices of their cars in their advertising; misrepresenting the cars' warranties; and misrepresenting the cost of dealer add-ons such as "GAP" insurance, service contracts, maintenance contracts, and so forth.  (Am. Compl., ECF No. 18, ¶¶ 26, 74-78, 79-83, 84-87.)   The FTC alleges substantially the same conduct, and it asserts that this conduct violated Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a).  (*Id.* ¶¶ 56-58, 59-61, 62-64.)   Both Plaintiffs seek "a permanent injunction to prevent future violations of the FTC Act and CUTPA."  (*Id.* at p. 26.)   Only the State seeks monetary relief; it asks for "such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of CUTPA, including, but not limited to . . . restitution, the refund of monies paid, civil penalties and the disgorgement of ill-gotten monies."  (*Id.* at p. 27.)

The parties held their Rule 26(f) conference on February 28, 2024, and they filed their Rule 26(f) report on March 18, 2024.  (Rule 26(f) Rpt., ECF No. 33.)   The Defendants then served document production requests on the State on March 29, 2024.  (Aff. of J. Kaplan, ECF No. 48-2, ¶ 3.)  The State served forty pages of responses and objections on April 29, 2024 (*id.* at pp. 24-

63), and two weeks later it produced the documents it had agreed to produce. (*Id.* ¶ 5.) A letter-writing campaign ensued over the documents that the State objected to producing (*id.* at pp. 65-76), and the parties met and conferred over the State's objections in a Microsoft Teams videoconference on June 11, 2024. (*Id.* ¶ 7.)

The conference failed to resolve the three issues that are the subjects of the pending motion. As noted above, the Defendants now ask the Court for an order compelling compliance with those document production requests that "encompass[ed] notes and memoranda from communications with consumers." (ECF No. 48-1, at 4.) Second, they seek an order compelling compliance with two production requests that inquired after "documents related to [the] State's damages claim." (*Id.* at 8.) Third, they assert that the State's "general objections" are improper, and they seek an order compelling their withdrawal. (*Id.* at 10.)

The Court received and reviewed a full round of briefs (ECF Nos. 48-1, 55, 56), and it heard nearly two hours' worth of oral argument on this motion and two others. (Minute Entry, ECF No. 61.) At the end of the argument, it encouraged the parties to renew their efforts to resolve their many discovery disputes by negotiation. On July 9, 2024, they reported that they had resolved some of those disputes, but not the three at issue here. (Joint Status Rpt., ECF No. 64.) The Court will therefore now resolve the motion, taking the three issues in turn.

## II.   DISCUSSION

### A.   Notes and Memoranda from Communications with Consumers

The Defendants say that the State produced only three categories of documents in its May 13, 2024 document production: "(1) complaints made by consumers; (2) some communications with certain consumers who filed complaints; and (3) signed and unsigned declarations by consumers." (ECF No. 48-1, at 4.) Reasoning that the declarations must have come from

somewhere, the Defendants inquired whether the State possessed any "notes from investigators', attorneys' and staff members' communications and meetings with consumers concerning such complaints and declarations." (*Id.*)

The State confirms that these documents exist, but it contends that they are protected from discovery by the work product doctrine. (ECF No. 55, at 3.)  In its brief, the State explained that after it filed suit, its "attorneys and investigator . . . began reaching out to [Chase Nissan] consumers who filed complaints . . . regarding their experiences." (*Id.* at 4.)  "Counsel for the State and FTC" then "formulated questions for the State's attorneys and investigator to use in interviewing such [Chase Nissan] consumers." (*Id.*)  The State therefore argues that disclosure of the interview notes would reveal "the questions formulated by Plaintiffs' counsel" and, by extension, their "attorneys' mental impressions, conclusions, opinions, or legal theories." (*Id.*)  The Defendants disagree. (*Cf.* Aff. of J. Kaplan, ECF No. 48-2, at 72.)

This dispute implicates well-established principles.  The work product doctrine shields from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]"  Fed. R. Civ. P. 26(b)(3).  Its principal purpose is to "shelter[] the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."  *United States v. Nobles*, 422 U.S. 225, 238 (1975).  The doctrine also encourages diligence by "prevent[ing] one party from piggybacking on the adversary's preparation."  *United States v. Adlman*, 68 F.3d 1495, 1501 (2d Cir. 1995) ("*Adlman I*"); *accord Hickman v. Taylor*, 329 U.S. 495, 516 (1947) (Jackson, J., concurring) (observing that the work product rule ensures that one side does not "perform its functions . . . on wits borrowed from the adversary").

Consistent with these purposes, "[t]hree conditions must be met to earn work product protection." *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 240 F.R.D. 96, 105 (S.D.N.Y. 2007) (quoting *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97-Civ.-4978 (LMH), 2002 WL 31556382, at \*4 (S.D.N.Y. Nov. 15, 2002)) (brackets omitted).   "The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative." *Id.*   In this circuit, the second element is satisfied when the document in question is shown to have been "prepared or obtained *because of* the prospect of litigation." *U.S. v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) ("*Adlman II*") (emphasis in original).

"There are two types of work product, ordinary or fact . . . and opinion." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2005).   "[F]act work product may encompass factual material, including the result of a factual investigation." *Id.* (citing *In re Grand Jury Subpoena Dated Oct. 22, 2001*, 282 F.3d 156, 161 (2d Cir. 2002)).   "In contrast, opinion work product reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative[.]'" *Id.* (quoting *Adlman II*, 134 F.3d at 1197).   Opinion work product is entitled to greater protection than fact work product.   *See* Fed. R. Civ. P. 26(b)(3)(B); *Adlman II*, 134 F.3d at 1197.   "[W]hereas fact work product is subject to disclosure once plaintiff has demonstrated substantial need," opinion work product "is entitled to the highest protection afforded by law, which requires at a minimum a highly persuasive showing of need for disclosure." *Dixon v. City of Buffalo*, No. 1:19-cv-1678 (WMS) (JJM), 2023 WL 11819596, at \*2 (W.D.N.Y. Jan. 19, 2023) (quotation marks, citations and ellipsis omitted).   Courts regularly describe the protection afforded to opinion work product as "virtually absolute." *E.g., id.; see also Noel v. City of New York*, No. 15-cv-5236 (LTS) (KHP), 2018 WL 6649969, at \*3 (S.D.N.Y. Dec. 18, 2018).

The party claiming work product protection bears the burden of proving that the doctrine applies. *In re Grand Jury Subpoenas Dated Mar. 19, 2002 and Aug. 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003) (stating that the party invoking the work product doctrine "bears the burden of establishing its applicability to the case at hand"). This burden has both substantive and procedural aspects. As a substantive matter, a party claiming ordinary work product protection "has the initial burden of showing that the material 1) is a document or tangible thing, 2) was prepared in anticipation of litigation, and 3) was prepared by or for a party, or by or for his representative." *Harris v. Provident Life & Acc. Ins. Co.*, 198 F.R.D. 26, 29 (N.D.N.Y. 2000). A party claiming the "virtually absolute" protection afforded to opinion work product must also "show 'a real, rather than speculative, concern' that the work product will reveal counsel's thought processes 'in relation to pending or anticipated litigation.'" *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 183-84 (quoting *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d at 386)).

As a procedural matter, a party claiming work product protection as to pre-litigation documents must support those claims with a privilege log. D. Conn. L. Civ. R. 26(e). Post-litigation materials need not be logged on a document-by-document basis in this district, *see id.* (exempting "work product material created after commencement of the action" from the logging requirement), but this does not mean that the claimant is excused from proving its claims with respect to those materials. Rather, it means only that the claimant typically proves its claims with an affidavit rather than with a document-by-document log. *See, e.g., Secs. & Exchange Comm'n v. Collector's Coffee, Inc.*, 337 F.R.D. 70, 77 (S.D.N.Y. 2020) (noting that the SEC supported its work product claims with an "affidavit of an attorney involved in the interviews who has attested to the creation and the purpose" of the interview notes at issue).

If the work product claimant shows that the doctrine's three conditions are satisfied, "the burden shifts to the party seeking discovery to prove that discovery is warranted." *Handsome, Inc. v. Town of Monroe*, No. 3:11-cv-1288 (RNC) (DFM), 2014 WL 348196, at *5 (D. Conn. Jan. 31, 2014) (quoting *In re Petition of MDM Marina Corp.*, No. 13-cv-597 (ENV) (VMS), 2013 WL 6711584, at *3 (E.D.N.Y. Dec. 18, 2013)); *accord Vermont Gas Sys., Inc. v. U.S. Fid. & Guar. Co.*, 151 F.R.D. 268, 277 (D. Vt. 1993) ("The burden rests on the party seeking disclosure to make the requisite showing."). In the case of fact work product, the discovery-seeking party can meet this burden by showing "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). "A substantial need exists 'where the information sought is essential to the party's defense, is crucial to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues.'" *Gucci Am. v. Guess?, Inc.*, 271 F.R.D. 58, 74-75 (S.D.N.Y. 2010) (quoting *Nat'l Congress for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105, 110 (S.D.N.Y. 2000)) (quotation marks omitted); *accord In re Aggrenox Antitrust Litig.*, No. 3:14-md-2516 (SRU), 2017 WL 5885664, at *12 (D. Conn. Nov. 29, 2017). An "undue hardship" exists when "it is likely to be significantly more difficult, time-consuming or expensive to obtain the information from another source than from the factual work product of the objecting party." *Id.* (quoting *Lagace v. New Eng. Cent. R.R.*, No. 3:06-cv-1317 (RNC) (DFM), 2007 WL 2889465, at *2 (D. Conn. Sept. 28, 2007)). Even when the discovery-seeking party demonstrates substantial need and undue hardship, the Court "must protect against disclosure of" opinion work product. Fed. R. Civ. P. 26(b)(3)(B). Indeed, "[d]isclosure of opinion work product is particularly disfavored by the courts and requires a far stronger showing of necessity

and unavailability by other means." *Go Med. Indus. Pty., Ltd. v. C.R. Bard, Inc.*, No. 3:95-MC-522 (DJS) (DFM), 1998 WL 1632525, at *5 (D. Conn. Aug. 14, 1998).

In this case, the State has met its initial burden to show that the disputed notes and memoranda qualify, at a minimum, for protection as fact work product.  To begin with, the notes and memoranda are of course "document[s] or tangible thing[s]."  Additionally, the State has produced an affidavit explaining that these documents were all created after the lawsuit was filed (Suppl. Aff. of M. Nunes, ECF No. 62, ¶ 3) (stating that the customer interviews memorialized in the notes and memoranda did not even begin until "after the filing of the present action"), and courts across the country have had little trouble concluding that interview notes created after the initiation of litigation qualify as protected work product. *E.g., Secs. & Exch. Comm'n v. Treadway*, 229 F.R.D. 454, 455-56 (S.D.N.Y. 2005); *Shannon v. Koehler*, 257 F.R.D. 519, 520-21 (N.D. Iowa 2009); *Garcia v. City of El Centro*, 214 F.R.D. 587, 595 (S.D. Cal. 2003).  The affiant likewise confirmed that the notes and memoranda were "prepared by or for a party, or by his representative" when he wrote that they were created by the "State's Legal Investigator, Caylee Ribeiro," and its litigation counsel.  (Suppl. Aff. of M. Nunes, ECF No. 62, ¶¶ 3, 6.)

The Defendants claim that the State did not meet its initial burden, but the Court disagrees. The Defendants first argue that the State did not serve a privilege log (ECF No. 48-1, at 6), but the State has since confirmed that all the notes and memoranda at issue were created after it filed the lawsuit.  (*See* Suppl. Aff. of M. Nunes, ECF No. 62, ¶ 3.)  They therefore do not need to be individually logged under District of Connecticut rules.  D. Conn. L. Civ. R. 26(e) ("This rule requires preparation of a privilege log with respect to all documents withheld on the basis of a claim of privilege or work product protection except[,]" *inter alia*, "work product material created after commencement of the action.").  The Defendants then argue that the second prong of the

State's privilege claim – that is, the requirement that the documents be "prepared in anticipation of litigation" – is supported only by "conclusory statements that merely articulate the legal standard." (ECF No. 48-1, at 6-7) (quotation marks and brackets omitted). But in the case they cite, there was a genuine dispute over whether the investigator's notes were created in the ordinary course of his employer's business. *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 497 (S.D.N.Y. 2019). In this case, by contrast, there is no genuine dispute that the documents were created in anticipation of litigation. The State's affiant confirms that the contested materials were created after the lawsuit was filed, and for the purpose of "prosecuting the case" (*see* Aff. of M. Nunes, ECF No. 62, ¶¶ 3, 4), and the Defendants have provided no reason to believe otherwise.

The Defendants next contend that the notes and memoranda are not protected "to the extent that [they] are primarily factual statements related to the events at issue in this case" (ECF No. 48-1, at 7), but the Court disagrees with this claim as well. It is true that the work product doctrine does not protect facts. *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 471 (S.D.N.Y. 1993) ("[T]he rule does not protect from disclosure the underlying facts known to the party or his counsel, even if acquired in anticipation of litigation."). "That does not mean, however, that otherwise protected documents lose their work product status merely because they contain factual information." *ECDC Envtl. v. New York Marine & Gen. Ins. Co.*, No. 96-Civ.-6033 (BSJ) (HBP), 1998 WL 614478, at *16 (S.D.N.Y. June 4, 1998). "[B]ecause the work product privilege does not protect the facts in that document . . . the party seeking those facts may obtain them through other means of discovery, such as through depositions and interrogatories." *Id.* But "[i]f a document constitutes protected work product, the party possessing the document generally need not produce it - even if the document contains only factual information." *Id.*

The case cited by the Defendants is not to the contrary.  In *Moroughan v. County of Suffolk* the court did indeed hold that a police sergeant's investigative notes were not protected by the work product doctrine.  No. CV-12-512 (JFB) (AKT), 2018 WL 11268801, at *4 (E.D.N.Y. Feb. 6, 2018).  But it did so only after observing that "the defendants ha[d] not asserted work product privilege;" that the plaintiff had "substantial need" for the notes and the facts contained therein; and that the "notes were prepared in the ordinary course of business pursuant to the Internal Affairs Unit's duty to investigate the plaintiff's Complaint."  *Id.*  Those considerations are not present here.  In short, the Defendants' arguments for not according at least fact work product protection to the State's notes and memoranda are unpersuasive.

Whether these documents qualify as *opinion* work product is not clear from the current record.  The State contends that disclosure would reveal not only the questions that its investigator and attorney chose to ask, but also the answers they thought worthy of writing down, and it argues that both would reveal "attorneys' or their representatives' mental impressions, conclusions, and opinions."  (ECF No. 55, at 4.)  The State then cites a well-reasoned case supporting the view that this sort of information may merit the higher level of protection given to opinion work product. (*Id.* at 5) (citing *Secs. & Exch. Comm'n v. Nadel*, No. CV-11-215 (WFK) (AKT), 2012 U.S. Dist. LEXIS 53173, at *19-23 (E.D.N.Y. Apr. 16, 2012)).  At the same time, a party claiming opinion work product bears a "heavy burden of demonstrating the applicability of the privilege," one that is not met by "mere[ly] conclusory or ipse dixit assertions."  *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 184. (internal quotation marks omitted). Here, the State's evidence is less fulsome than the SEC's careful presentation in *Nadel*.  The State's affidavit says only that its attorneys and the FTC's attorneys worked together on a script; that its litigation counsel and investigator Ribeiro then asked the scripted questions to Chase's customers; and that they "took

notes summarizing . . . [the] responses." (Suppl. Aff. of M. Nunes, ECF No. 62, ¶¶ 3-6.)  It then states that the questions and notes must therefore reflect mental impressions and legal theories. (*Id.*)  In *Nadel*, by contrast, the SEC submitted its notes for *in camera* review; explained in detail what its attorneys had instructed the investigators to record and not record; and cited concrete examples of notes that, if disclosed, would "reveal what the staff note takers and/or attorneys felt was important information."  2012 WL 1268297, at *7-8.  In sum, the record is not clear that the State's notes and memoranda qualify for the heightened protection due to opinion work product.

Yet because these documents qualify for fact work product protection at a minimum, the burden shifts to the Defendants to show "substantial need" and "undue hardship"  They have not done so.  They predict that the State may someday "waive any work product privilege by making 'testimonial use' of the documents," and they argue that this mere possibility creates a substantial need.  (ECF No,. 48-1, at 5-6.)   But they cite no authority for this claim; the two cases they cite stand only for the unobjectionable proposition that a party may waive work product protection if it does, in fact, place the protected documents at issue by making actual testimonial use of them. (*Id.*) (citing *New York Times Co. v. Dep't of Justice*, 939 F.3d 479, 494 (2d Cir. 2019) and *Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 605-06 (D.C. Cir. 2001)).  Neither case stands for the proposition that the Defendants may access the State's work product now, in advance of any testimonial use, merely because they think it is "probable" that the State will put the documents at issue later in the case.

For these reasons, the Defendants' motion to compel production of the State's "notes from investigators', attorneys' and staff members' communications and meetings with consumers concerning [the consumers'] complaints and declarations" is **DENIED.**  The denial is without

prejudice to renewal in the event of a material change in circumstance, *e.g.,* an actual testimonial use of the documents by either Plaintiff.

### B.        Documents Related to the State's Damage Claims

The Defendants next seek an order compelling compliance with two requests for production that inquired about the State's claims for monetary relief.  As noted above, the FTC does not seek any such relief in this case, but the State seeks restitution, refunds, civil penalties, and disgorgement.  (Am. Compl., ECF No. 18, pp. 26-27.)  In their briefs, the parties refer to these claims collectively as the State's "damages claim."  (*E.g.*, ECF No. 48-1, at 8.)

To understand the Defendants' arguments, some additional factual background will be useful.  Before this case went into suit, the State apparently made a settlement proposal to the Defendants that included a monetary component.  (ECF No. 48-1 at 9.)  After the parties failed to reach a settlement, the State filed suit and discovery began.  The Defendants then served Request for Production No. 11, which inquired after "[a]ll documents and communications concerning the damages calculation verbally proffered to Defendants' counsel" during the pre-suit settlement negotiations – that is, "on or about October 6, 2023." (ECF No. 48-2, at 14.)  The Defendants also served Request for Production No. 57, which sought "[a]ll documents and communications related to any other claims by the State of Connecticut's [*sic*] for the recovery of monetary and/or economic damages of any type."  (*Id.* at 18.)

The State objected to both requests.  It objected to Request No. 11 on the ground that documents concerning its October, 2023 damages calculation were "not relevant to a claim or defense in this case," but it wisely abandoned that objection in its brief.  (ECF No. 48-2, at 35; ECF No. 48-1, at 7-9); *see also Huseby, LLC v. Bailey*, No. 3:20-cv-167 (JBA) (TOF), 2021 WL 723319, at *4 n.1 (D. Conn. Feb. 24, 2021) (quoting the leading case of *Cardenas v. Dorel Juvenal*

*Grp., Inc.*, 230 F.R.D. 611, 620 (D. Kan. 2005) for the proposition that "objections asserted in a party's initial response to a discovery request – but not reasserted in response to a motion to compel – are deemed abandoned").  With respect to both Request No. 11 and Request No. 57, the State objected on grounds of "attorney-client, common-interest, deliberative process, or informant's privileges."  (ECF No. 48-2, at 35, 58.)  And the State also objected to each Request "to the extent that it purports to require the State to produce documents not within the custody or control of the State."  (*Id.*)  The State said that it would produce some documents in response to Request No. 57, "[w]ithout waiving and subject to [its] general and specific objections," but it refused to produce any documents responsive to Request No. 11.  (*Id.*)  The parties failed to resolve these objections in their meet-and-confer sessions (*id.* at 65-76), so the Defendants moved to compel compliance.  (ECF Nos. 48, 48-1 at 8-10.)  The Court will address the two requests in numerical order.

### 1.      *Request for Production No. 11*

In its opposition to the Defendants' motion, the State elaborated on its custody/control objection to Request No. 11.  As noted, that request sought documents relating to the damages calculation conveyed during pre-suit settlement negotiations.  The State's brief explained that the calculation was "based partially on documents and data produced to the FTC by Chase Nissan in response to the FTC's Civil Investigative Demand," and partially on "data produced by Cars.com and" Nissan Extended Services North America.  (ECF No. 55, at 7.)  It represented that it had produced those specific documents, but it said that "[a]ll other material on which the Plaintiffs relied in their calculations are in the FTC's possession[.]"  (*Id.*)  The FTC submitted a brief of its own, and it added that it had "conducted a joint investigation" with the State.  (ECF No. 56, at 1.)  The FTC stated that all unproduced, responsive documents "are the FTC's documents[.]"  (*Id.* at 3.)

The State is mistaken when it suggests that its production obligations encompass only those documents that are in its physical possession.  Rule 34(a)(1) states that those obligations extend to "items in the responding party's possession, custody, or control," and in the Second Circuit, "[t]he concept of 'control' has been construed broadly."  *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006).  "'[C]ontrol' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents" from the person or entity that has physical custody of them.  *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 146-47 (S.D.N.Y. 1997).  Thus, the State's production obligations can include documents in the FTC's physical possession, so long as the State has the "practical ability" to obtain them from the FTC.  *See Shcherbakovskiy v. Da Capo al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("[I]f a party has access and the practical ability to possess documents not available to the party seeking them, production may be required.").

Because both sides misapprehended the standard, no party briefed the issue of whether the State has the "practical ability" to reacquire the documents that the FTC evidently shared with it when it formulated its pre-suit damages calculation.  (*See* ECF Nos. 48-1, 55, 56.)  This counsels against granting the Defendants' motion with respect to Request No. 11, because the weight of authority holds that "[t]he burden of demonstrating that the party from whom discovery is sought has the practical ability to obtain the documents at issue lies with the party seeking discovery."  *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 148 (S.D.N.Y. 2011) (citing *Golden Trade S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 n.7 (S.D.N.Y. 1992); *see also Honda Lease Tr. v. Middlesex Mut. Assur. Co.*, No. 3:05-cv-1426 (RNC) (DFM), 2008 WL 3285242, at *2 (D. Conn. Aug. 7, 2008) (denying motion to compel because moving party failed to meet its "burden to

establish that the documents it seeks are within the opposing party's control"); *but see In re Dunne*, No. 3:17-cv-1399 (MPS), 2018 WL 4654698, at *5 (D. Conn. Sept. 27, 2018) (affirming Bankruptcy Court's order granting motion to compel, because producing party "failed to provide any evidence demonstrating his lack of control").  Because the State says without contradiction that it has produced all responsive documents in its physical possession, and because the Defendants have not shown that the State "controls" or has the practical ability to obtain the responsive documents in the FTC's possession, the Defendants' motion is **DENIED** with respect to Request for Production No. 11.  The denial is without prejudice to renewal in the event that the Defendants develop, through other discovery, evidence of the State's ability to obtain the FTC's documents.  It is also without prejudice to the Defendants' right to request the documents directly from the FTC, or to the FTC's right to object to such a request on privilege or other applicable grounds.

### 2.       *Request for Production No. 57*

As previously noted, Request No. 57 sought "[a]ll documents and communications related to any other claims by the State of Connecticut's [*sic*] for the recovery of monetary and/or economic damages of any type."  (ECF No. 48-2, at 18.)  The State objected on several grounds, but it promised to produce some responsive documents "[w]ithout waiving and subject to" its objections.  (Aff. of J. Kaplan, ECF No. 48-2, at 58-59.)  It then produced its copies of certain documents that the Defendants had given to the FTC in response to a civil investigative demand, along with the aforementioned "data produced by Cars.com and [Nissan Extended Service North America]" and one other spreadsheet.  (ECF No. 55, at 7.)  But the State is withholding all other documents responsive to Request No. 57 on two grounds:  (1) it claims that at least some of those documents are protected from discovery by the attorney-client privilege, the deliberative process

privilege, and/or the work product doctrine (*id.* at 7-8; *see also* ECF No. 48-2, at 58, 61); and (2) it argues that discovery into its monetary claims is "premature" at this stage of the case. (ECF No. 55, at 7-8.)

With respect to the first ground, the State has been dilatory in supporting its privilege claims. In contrast to the notes and memoranda discussed in Section II.A above, the State conceded at oral argument that the body of documents responsive to Request No. 57 includes documents created before it commenced this action. The State was therefore obliged to serve a document-by-document privilege log, *see* D. Conn. L. Civ. R. 26(e), but it did not do so when it served its responses and objections in April, nor did it do so when it served its document production in May. (*See* Joint Status Rpt., ECF No. 64, at 1.)

The State did, however, finally serve a privilege log on June 25, 2024. (*Id.*) At oral argument three days later, the Defendants did not contend that the State had waived its privileges by delay. The Court therefore will not hold that the State has waived its privileges or work product protection with respect to documents responsive to Request No. 57 by failing to serve a timely log. *See Imperati v. Semple*, No. 3:18-cv-1847 (RNC) (TOF), 2020 WL 4013304, at *5 (D. Conn. July 16, 2020) ("Privileges serve important purposes, and they should therefore be deemed waived only after careful thought.") (quotation marks and citation omitted). The Defendants may of course challenge any individual privilege claim as unmeritorious, but the Court declines to find a blanket waiver of privilege on the current record.

With respect to non-privileged, non-work product documents responsive to Request No. 57, the State's principal argument is that it would be "premature" to produce them. (ECF No. 55, at 8.) It says that it cannot calculate its monetary claims until the Defendants first produce *their* documents. (*Id.*) It argues that, "[t]o the extent Defendants are requesting a precise analysis of

the amount the State seeks in disgorgement, restitution, and civil penalties, Defendant[s] are best able to calculate those amounts because disgorgement seeks the profits Defendants unlawfully took from consumers, restitution seeks all funds that consumers wrongfully paid to Defendants, and any civil penalties takes [*sic*] into account Defendants' ability to pay." (*Id*. at 9.)  Until they produce their own documents, "Defendants are the only ones who know these amounts."  (*Id.*)

This argument is unpersuasive for several reasons, the first of which is that it does not really address the issue that is before the Court.  The State says that Request No. 57 is premature "[t]o the extent that" it seeks a "precise" damage calculation, but that is not what the request seeks. Request No. 57 is not a Rule 33 interrogatory that asks the State to calculate its monetary claims with precision or finality, but rather a Rule 34 production request that asks for documents related to those claims, whatever they may be.  To be sure, the Defendants were the first ones to veer off onto the sidetrack of calculations and damages analyses, and the State was entitled to respond to that digression. (*See* ECF No. 48-1, at 9) (explaining that the Defendants propounded Request No. 57 in part because the State had not provided a genuine damages analysis with its Rule 26(a) disclosures, and further suggesting that it expected a damages analysis to be among the responsive documents).  Nevertheless, the issue now before the Court is not whether the State should be ordered to state the final amount of its monetary claims with precision; rather, the issue is whether Request No. 57 seeks relevant documents and, if so, whether the State has come forward with a sufficient reason for denying access to them.  *See Huseby*, 2021 WL 3206776, at *6 ("[T]he moving party must make a *prima facie* showing of relevance, after which it is up to the responding party to justify curtailing discovery.") (quotation marks and citation omitted).  Here, the requested documents are obviously relevant, and indeed the State has not argued otherwise.  (*See* ECF No. 55, at 7-9) (failing to contest the relevance of documents related to monetary claims).

Moreover, the State is mistaken when it suggests that it would be "premature" to expect it to produce non-privileged documents related to its monetary claims.  To the contrary, litigants are ordinarily *required* to compute the amount of those claims, and to disclose those computations and the documents upon which they were based, at the earliest stages of a case.  Rule 26(a)(1)(A) provides that, "[e]xcept as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party[.]"  The rule further provides that the party "must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based[.]"  Fed. R. Civ. P. 26(a)(1)(A)(iii).

A litigant may not avoid these obligations on the ground that its adversary has yet to produce its own documents, as the State contends.  "A party is not excused from making its disclosures because it has not fully investigated the case or because . . . another party has not made its disclosures."  Fed. R. Civ. P. 26(a)(1)(E).  Rather, the party must do the best it can with the information then available to it.  *See* Fed. R. Civ. P. 26 advisory committee's note to 1993 amendments ("This obligation applies only with respect to documents then reasonably available to it[.]").  As a leading treatise explains, "[a] party claiming damages must, of course, have some evidence that an injury occurred and some basis for calculating the damages the party suffered as the result of that injury before filing suit."  6 James Wm. Moore *et al.*, Moore's Federal Practice § 26.22[4][c] (3d ed. 2023). "The party making such a claim, therefore, has the obligation, when it makes its initial disclosures, to disclose to the other part[y] the best information then available to it concerning that claim, however limited and potentially changing it may be."  *Id.; see also U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12-Civ.-6811 (CM) (JCF), 2013 WL 5495542, at

*3 (S.D.N.Y. Oct. 3, 2013). Of course, the party is entitled to amend or supplement its calculation and supporting document production as it learns more in discovery. *See id.* ("[T]he disclosing party still has the responsibility to provide each category of required disclosures based on the information it has at the time, and to supplement those disclosures as more information is gained."); *see also* Fed. R. Civ. P. 26 advisory committee's notes to 1993 amendment ("Subparagraph (C) imposes a burden of disclosure that includes the functional equivalent of a standing Request for Production under Rule 34."). But it cannot avoid its initial disclosure obligation by claiming that it does not yet know everything. *See Lima LS PLC v. PHL Variable Ins. Co.*, No. 3:12-cv-1122 (WWE) (HBF), 2014 WL 2002485, at *1 (D. Conn. May 15, 2014) (stating that, at the initial disclosure stage, a party must compute each category of damages claimed and produce the supporting documents "as best as the party is able at an early stage in the case").

This principle is not contradicted in the lone case cited by the State, *ProBatter Sports, LLC v. Sports Tutor, Inc.*, No. 3:05-cv-1975 (VLB), 2016 WL 1178051, (D. Conn. Mar. 23, 2016). *ProBatter Sports* was a patent infringement case in which the court observed that it can sometimes be appropriate to defer the disclosure of damage calculations until later in the case. *Id.* at *6 (noting that, "in many patent infringement actions," the damages calculation "depends on information in the possession of another party or person"). But the court expressly declined to broaden this principle into a holding that "all damages discovery is impossible until that point." *Id.* Thus, even if it were true that the State cannot supply a preliminary calculation of its monetary claims until it receives the Defendants' document production, *ProBatter Sports* provides no reason why the State cannot or should not produce any extant, non-privileged documents relating to those claims.

19

In summary, Request No. 57 seeks relevant information, and the State has not identified a sufficient justification for denying access to that information. The Defendants' motion will therefore be **GRANTED** as to Request No. 57, and the State will be ordered to produce non-privileged documents that are responsive to it.

### C.    General Objections

Finally, the Defendants challenge the State's use of "general objections" in responding to requests for production under Rule 34. (ECF No. 48-1, at 10.) The State organized its forty-page response into two principal sections. In the first, the State asserted six "General Objections" and two general reservations, and in the second, it provided its specific responses and objections to each of the Defendants' fifty-nine production requests. (ECF No. 48-2, at 24-64.) The six "General Objections" are, in substance, objections to the Defendants' requests (1) "to the extent that they seek to impose on the State any obligations beyond those provided for" in the rules; (2) "to the extent that they seek to require the State to respond . . . based on information that is not within the State's possession, custody, or control;" (3) "to the extent that they seek material that is not discoverable pursuant to the Federal Rules of Civil Procedure," "including, but not limited to" privileged information; (4) "to the extent that they seek information that is not relevant to a claim or defense or proportional to the needs of the case;" (5) "to the extent they are vague, ambiguous, overly broad, or unduly burdensome;" and (6) "to the extent that [they] require[] the State to produce documents in the possession, custody, and/or control of the State that would be duplicative of documents produced by the" FTC. (*Id.* at 25-26.) The State purported to "incorporate[]" these "[g]eneral [o]bjections" into its specific responses to each of the fifty-nine production requests. (*Id.* at 26.) It did not say whether it was withholding any documents pursuant to these "general objections."

The law is now clear that these sorts of objections are improper.  After a 2015 amendment, Rule 34 "no longer permits global, generalized objections to each request" for production. *CapRate Events, LLC v. Knobloch*, No. 17-cv-5907 (NGG) (SJB), 2018 WL 4378167, at *2 (E.D.N.Y. Apr. 18, 2018); *see also Finkelstein v. Bical*, No. 23-cv-49 (LDH) SJB), 2023 WL 9119575, at *1 (E.D.N.Y. Dec. 14, 2023) (same).  Moreover, the amended rule requires that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C).  A responding party violates Rule 34(b)(2)(C), and the specificity requirement of Rule 34(b)(2), when it purports to "incorporat[e] all of the General Objections into each response." *Fischer v. Forrest*, No. 14-Civ.-1304 (PAE) (AJP), 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017); *see also Success Sys., Inc. v. CRS, Inc.*, No. 321-cv-1391 (SVN) (TOF), 2023 WL 2403940, at *3 n.3 (D. Conn. Mar. 8, 2023) ("'[G]eneral' objections to document production requests are no less subject to Rule 34(b)(2)(C) than specific objections.").

There are good reasons for these rules.  Among other benefits, the general prohibition on "global, generalized objections" "force[s] parties to be transparent about discovery." *CapRate Events*, 2018 WL 4378167, at *2.  The amended Rule 34(b)(2)(C) "is intended to avoid confusion when a producing party states objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objection[]." *Passenti v. Veyo, LLC*, No. 3:21-cv-1350 (SRU) (MEG), 2022 WL 17261411, at *7 (D. Conn. Nov. 29, 2022) (quoting 7 James Wm. Moore *et al.*, Moore's Federal Practice § 34.13[2][b] (3d ed. 2021)).

Several courts have recognized a single exception to the prohibition on general objections. "The exception to this rule . . . is that general objections may be appropriate only if the objection applies to every response to every document request." *OnActuate Consulting, Inc. v. Aeon Nexus*

*Corp.*, No. 1:20-cv-508 (LEK) (CFH), 2023 WL 5097912, at *5 (N.D.N.Y. Aug. 9, 2023); *see also*

*Lombardo v. R.L. Young, Inc.*, No. 3:18-cv-188 (JBA) (RMS), 2019 WL 4233568, at *3 (D. Conn.

Sept. 6, 2019) ("[C]ourts within the Second Circuit have held that . . . general objections should

not be asserted unless they apply to each document request.").  Courts have applied this exception

to privilege objections – that is, they have inferred that the responding party intended its privilege

objection to apply to every request, and they have accordingly refrained from holding that the use

of a "general objection" constituted a waiver of privilege.  *E.g., Fischer*, 2017 WL 773694, at *3;

*Sovereign Cape Cod Investors LLC v. Eugene A. Barstow Ins. Agency, Inc.*, No. 20-cv-3902 (DG)

(JMW), 2022 WL 624553, at *4 (E.D.N.Y. Mar. 3, 2022); *but see New York Central Mut. Fire*

*Ins. Co. v. Nissan N. Am., Inc.*, No. 22-cv-272 (WMS) (LGF), 2023 WL 6304721, at *2 (W.D.N.Y.

Sept. 29, 2023) (holding that even privilege objections were waived when asserted only as "general

objections").  But the exception is a "narrow" one, and it is invoked only "sparingly."  *Sovereign*

*Cape Cod Investors LLC*, 2022 WL 624553, at *4.  When this "narrow" exception does not apply,

"the rule [is] that general objections are no longer permissible." (*Id.*)

        In this case, the State opposes the Defendants' motion with only a single, underdeveloped

paragraph.  (ECF No. 55, at 9-10.)  It does not disagree with the foregoing legal principles, and

indeed it cites no authorities at all.  (*Id.*)  It did not re-serve its general objections as specific

objections, as litigants sometimes do after having these principles called to their attention by their

adversary's motion.  *E.g., OnActuate Consulting*, 2023 WL 5097912, at *6 ("[A]lthough the first

response was violative of Rule 34, and the Court does not condone the use of general objections,

defendant has since supplemented its objections.").  Instead, the State attempts to invoke the

narrow exception, arguing that each of its general objections is "applicable to each corresponding

request."  (ECF No. 55, at 10.)

This argument cannot withstand review of the Defendants' requests.  Take, for example, Request Nos. 1 and 5, which respectively sought production of "[a]ll documents referenced either specifically or by category in Plaintiffs' Initial Disclosures pursuant to Rule 26(a)(1)" and "[a] copy of any non-privileged statements or recordings of any party in this lawsuit or any third party concerning this Action or its subject matter."  (ECF No. 48-2, at 26, 30.)  The State asserted a general objection "to the extent" that the Defendants' requests were "vague" and "ambiguous" (*id.* at 26), but there is nothing vague or ambiguous about these two requests.  The State also asserted a general objection "to the extent" that the Defendants' requests were "unduly burdensome," but there can be nothing unduly burdensome about being asked to produce documents referenced in a 26(a) disclosure or the non-privileged statements in one's possession.  The State additionally objected "to the extent that" the Defendants' requests "seek information that is not relevant to a claim or defense," (*id.* at 25), but the documents referenced in the State's own 26(a) disclosures are almost certainly relevant by the State's own admission.  Rule 26(a), after all, requires disclosure of documents "that the disclosing party may use to support its claims or defenses," Fed. R. Civ. P. 26(a)(1)(A)(ii), and the State cannot plausibly assert that a document disclosed under this rule is "not relevant to a claim or defense."

In short, it cannot be the case that each "general objection" truly applies to each of the Defendants' fifty-nine requests.  Because the State has therefore not properly invoked the lone exception to the general prohibition against general objections, the Defendants' motion is **GRANTED** as to this issue.  The State will be ordered to withdraw its general objections and revise its responses.

### III.   Conclusion and Order

For the foregoing reasons, the Defendants' Motion to Compel Plaintiff State of Connecticut's Responses to Discovery (ECF No. 48) is granted in part and denied in part. The motion is granted to the extent that:

A. The State of Connecticut is ordered to produce non-privileged, non-work-product documents that are responsive to Request for Production No. 57 in the Defendants' First Set of Requests for Production dated March 29, 2024;

B. The State of Connecticut is ordered to log any documents withheld from that production under a claim of privilege or work product protection on a privilege log meeting the requirements of D. Conn. L. Civ. R. 26(e); and

C. Except as to privilege and work product, the "general objections" asserted by the State of Connecticut on pp. 2-3 of its April 29, 2024 Responses and Objections to First Set of Requests for Production are ordered withdrawn. The State is ordered to revise its responses and objections to all Requests for Production other than Request No. 57 so that they comply fully with Fed. R. Civ. P. 34(b)(2), including in particular the specificity requirement of Fed. R. Civ. P. 34(b)(2)(B) and the requirement of Fed. R. Civ. P. 34(b)(2)(C) that each "objection must state whether any responsive materials are being withheld on the basis of that objection."

Compliance with these orders shall be made by August 12, 2024. *See* D. Conn. L. Civ. R. 37(d) ("Unless a different time is set by the Court, compliance with discovery ordered by the Court shall be made within fourteen (14) days of the filing of the Court's order.").

The Court has carefully considered all other arguments raised by the Defendants and concludes that they are not entitled to any further relief.  Except to the extent set forth in the foregoing subparagraphs A, B, and C, the Defendants' motion is denied.

This is not a recommended ruling.  It is a ruling by a Magistrate Judge on "nondispositive motions . . . relating to discovery," D. Conn. L. Civ. R. 72.1(C)(2), and as such it is reviewable pursuant to the "clearly erroneous" statutory standard of review.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2(b).  It is an order of the Court unless reversed or modified upon timely objection under Local Rule 72.2(a).

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge