# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and <br><br> STATE OF CONNECTICUT, <br><br><br> Plaintiffs, <br><br><br> v. <br><br><br> CHASE NISSAN LLC, a limited liability company, also d/b/a MANCHESTER CITY NISSAN, *et al*. <br><br><br> Defendants. | Case No. 3:24-cv-00012-JCH <br><br> **MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFF STATE OF CONNECTICUT'S MOTION FOR SUMMARY JUDGMENT** <br><br><br> April 21, 2025 |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff State of Connecticut hereby moves for summary judgment against Defendants Chase Nissan LLC, also d/b/a Manchester City Nissan ("Chase Nissan"), Patrick Dibre, Refaat Soboh, aka Brian Soboh, Michael Hamadi, Aiham Alkhatib, Matthew Chmielinski, and Fred Mojica, aka Freddy Mojica for violating the Connecticut Unfair Trade Practices Act (Counts VII–XVII). In support of this Motion, the State submits a supporting Memorandum of Law and refers to the Plaintiffs' Joint Local Rule 56(a)1 Statement of Undisputed Material Facts and accompanying Appendix of exhibits.

WHEREFORE, the State of Connecticut moves this Court to enter judgment on all counts against all applicable Defendants—Counts VIII–X and XVII against all Defendants; Count VII

ORAL ARGUMENT NOT REQUESTED

against Chase Nissan, Patrick Dibre, Refaat Soboh, and Michael Hamadi; Count XI against

Chase Nissan, Patrick Dibre, and Refaat Soboh, Michael Hamadi, and Aiham Alkhatib; and

Counts XII–XVI against Chase Nissan—issue the proposed injunction, and award monetary

relief.

ORAL ARGUMENT NOT REQUESTED

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF UNDISPUTED FACTS ......................................................... 2

III.   THE STATE IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIMS ............... 2

   A.   The undisputed facts show that MCN violated CUTPA. ............................... 3

     1.   Count VII: MCN's Deceptive Price Representations .................................. 4

     2.   Count VIII: MCN's Deceptive Certification Claim .................................... 4

     3.   Count IX: MCN's Deceptive Fee and Add-on Representations .................. 4

     4.   Count X: MCN's Deceptive Representations Regarding Authorization of Charges ... 4

     5.   Count XI: MCN's Deceptive State Registration Fee Representations ....................... 4

     6.   Count XII: MCN's Per Se Violations of Conn. Agency Reg. § 42-110b-18(c) ........... 5

     7.   Count XIII: MCN's Per Se Violations of Conn. Agency Reg. § 42-110b-22 .............. 5

     8.   Count XIV: MCN's Per Se Violations of Conn. Agency Reg. § 42-110b-28(b)(1) .... 6

     9.   Count XV: MCN's Per Se Violations of Conn. Agency Reg. § 42-110b-28(b)(6) ...... 7

    10.  Count XVI: MCN's Per Se Violations of Conn. Agency Reg. § 42-110b-28(b)(17) .. 7

   B.   Undisputed facts show that the Individual Defendants are liable for the corporate
defendant's CUTPA violations. ........................................................................ 8

IV.   INJUNCTIVE RELIEF, MONETARY RELIEF AND CIVIL PENALTIES ARE
WARRANTED TO PREVENT AND REMEDY DEFENDANTS' CUTPA VIOLATIONS
.................................................................................................................. 8

   A.   Injunctive relief is warranted......................................................................... 9

     1.   Michael Hamadi ........................................................................................ 11

     2.   Aiham Alkhatib ......................................................................................... 11

   B.   Monetary relief is necessary to redress consumers for their harm. .............. 13

     1.   MCN knew or should have known its conduct was unfair or deceptive .................. 17

     2.   Patrick Dibre knew or should have known his conduct was unfair or deceptive ...... 19

     3.   Brian Soboh knew or should have known his conduct was unfair or deceptive ....... 20

     4.   Michael Hamadi knew or should have known his conduct was unfair or deceptive 21

     5.   Aiham Alkhatib knew or should have known his conduct was unfair or deceptive.. 23

     6.   Matthew Chmielinski & Freddy Mojica knew or should have known their conduct
was unfair or deceptive............................................................................. 24

V.    CONCLUSION.............................................................................................. 25

ORAL ARGUMENT NOT REQUESTED

# TABLE OF AUTHORITIES

## Cases

*Associated Investment Co. L.P. v. Williams Associates IV*, 230 Conn. 148 (1994) ...................... 14

*Caldor, Inc. v. Heslin*, 215 Conn. 590 (1990), *cert. denied*, 498 U.S. 1088 (1991) ....................... 3

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................. 2

*Dickerson v. Napolitano*, 604 F.3d 732 (2d Cir. 2010) ...................................................... 2

*Edwards v. N. Am. Power & Gas, LLC*, 120 F. Supp. 3d 132 (D. Conn. 2015) ............................. 4

*Freeman v. A Better Way Wholesale Autos, Inc.*, 174 Conn. App. 649, *cert. denied*, 327 Conn. 927 (2017) ...................................................................................................... 6

*FTC v. BlueHippo Funding, LLC*, 762 F.3d 238 (2d Cir. 2014) ...................................... 15, 16

*FTC v. Bonnie & Co. Fashions, Inc.*, No. CIV. 90-4454 (HLS), 1992 WL 314007 (D.N.J. Sept. 28, 1992) ................................................................................................... 20, 21

*FTC v. Bronson Partners, LLC*, 674 F. Supp. 2d 373 (D. Conn. 2009), *aff'd*, 654 F.3d 359 (2d Cir. 2011) .................................................................................................... 10

*FTC v. Colgate-Palmolive*, 380 U.S. 374 (1965) .............................................................. 9

*FTC v. Direct Marketing Concepts, Inc.*, 624 F.3d 1 (1st Cir. 2010) ........................................ 14

*FTC v. Febre*, 128 F.3d 530 (7th Cir. 1997) ................................................................. 15

*FTC v. Fed. Check Processing*, No. 14-122, 2016 WL 5940485 (W.D.N.Y. Oct. 13, 2016), *aff'd sub nom. FTC v. Moses*, 913 F.3d 297 (2d Cir. 2019) ......................................................... 10

*FTC v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1993) ..................................................... 15

*FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502 (S.D.N.Y. 2000) ..................................... 10

*FTC v. Instant Response Sys., LLC*, No. 13-976, 2015 WL 1650914 (E.D.N.Y. Apr. 14, 2015) .. 10

*FTC v. Jones*, No. SA CV 17-0058-DOC, 2017 WL 11198503 (C.D. Cal. May 25, 2017) ... 22, 23

*FTC v. LeadClick Media, LLC*, 838 F.3d 158 (2d Cir. 2016) .......................................... 2, 3, 8, 14

*FTC v. LeanSpa, LLC*, No. 3:11-CV-1715, 2015 WL 1004240, (D. Conn. Mar. 5, 2015) ............. 2

*FTC v. RCG Advances, LLC*, 695 F. Supp. 3d 368 (S.D.N.Y. 2023) ................................... 2, 9, 10

*FTC v. Romero*, 658 F. Supp. 3d 1129 (M.D. Fl. 2023) ............................................... 20, 21

*FTC v. Shkreli*, 581 F. Supp. 3d 579 (S.D.N.Y. 2022), *aff'd*, 2024 WL 1026010 (2d Cir. Jan. 23, 2024), *cert. denied*, 145 S. Ct. 171 (2024) ...................................................................... 10

*FTC v. Verity Int'l, Ltd.*, 335 F. Supp. 2d 479 (S.D.N.Y. 2004), *aff'd*, 443 F.3d 48 (2d Cir. 2006), *cert. denied*, 549 U.S. 1278 (2007). .............................................................. 10, 14

*Hernandez v. Apple Auto Wholesalers of Waterbury LLC*, 460 F. Supp. 3d 164 (D. Conn. 2020). 6

*Heublein, Inc. v. United States*, 996 F.2d 1455 (2d Cir. 1993) ............................................ 2

*In re Dana Corp.*, 574 F.3d 129 (2d Cir. 2009) ............................................................. 2

ORAL ARGUMENT NOT REQUESTED

*Jay Norris, Inc. v. FTC*, 598 F.2d 1244 (2d Cir. 1979), *cert denied*, 444 U.S. 980 (1979) ........... 9

*Joseph Gen. Contr., Inc. v. Cuoto*, 317 Conn. 565 (2015) ............................................................ 8

*SEC v. Mgmt. Dynamics, Inc*., 515 F.2d 801 (2d Cir. 1975) ....................................................... 9

*State v. Caldwell*, 246 Conn. 721 (1998) ............................................................................ 14, 17

*State v. Macko*, Docket No. HHD-CV12-6031858-S, 2016 WL 4268383 (62 Conn. L. Rptr. 862) (Conn. Super. Ct. Aug. 1, 2016) ......................................................................................... 17

*Togridis v. Soletech, Inc*., No. X08-CV-166029467, 2018 WL 5099751, (Conn. Super. Ct. Sept. 28, 2018) ........................................................................................................................ 4

*Ulbrich v. Groth*, 310 Conn. 375 (2013) ...................................................................................... 3

*United State v. Building Inspector of America*, 894 F. Sup. 507 (D. Mass. 1995) ..................... 18

*United States v. Lasseter*, Docket No. 3:03-1177, 2005 WL 1638735 (M.D. Tenn. June 30, 2005) ..................................................................................................................................... 19

*United States v. Prochnow*, Docket No. 1:02-CV-0917-JOF, 2005 WL 8154273 (N.D. Ga. Dec. 2, 2005) .............................................................................................................................. 22

**Federal Statutes**

15 USC 45(a)(1) ........................................................................................................................ 14

**State Statutes**

Conn. Gen. Stat. § 42-110a ......................................................................................................... 1

Conn. Gen. Stat. § 42-110b ................................................................................................. passim

Conn. Gen. Stat. § 42-110b(a) ..................................................................................................... 3

Conn. Gen. Stat. § 42-110b(b) ................................................................................................... 14

Conn. Gen. Stat. § 42-110b(c) .................................................................................................. 3, 4

Conn. Gen. Stat. § 42-110b(d) ..................................................................................................... 3

Conn. Gen. Stat. § 42-110m(a) .................................................................................................... 9

Conn. Gen. Stat. § 42-110o(b) ............................................................................................. 16, 17

**State Regulations**

Conn. Agency Reg. § 42-110b-18(c) ............................................................................................ 5

Conn. Agency Reg. § 42-110b-22 ............................................................................................. 5, 6

Conn. Agency Reg. § 42-110b-28 ..................................................................................... 4, 17, 20

Conn. Agency Reg. § 42-110b-28(b)(1) .............................................................................. 6, 7, 18

Conn. Agency Reg. § 42-110b-28(b)(17) ............................................................................ 7, 8, 18

Conn. Agency Reg. § 42-110b-28(b)(6) .................................................................... 7, 18, 21, 24

ORAL ARGUMENT NOT REQUESTED

Plaintiff State of Connecticut (the "State") respectfully submits this memorandum in support of its motion for summary judgment against Defendants Chase Nissan LLC, also d/b/a Manchester City Nissan ("Chase Nissan" or "MCN"), Patrick Dibre, Refaat Soboh, aka Brian Soboh, Michael Hamadi, Aiham Alkhatib, Matthew Chmielinski, and Fred Mojica, aka Freddy Mojica (collectively "Defendants"). The State herein alleges violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, *et seq*.

## I.    **INTRODUCTION**

Defendants own and operate an auto dealership, Manchester City Nissan, that defrauded thousands of consumers of nearly $19 million. They repeatedly lied to consumers regarding their vehicles' prices and various fees that they told consumers were required, but in fact were not. They also charged consumers for additional products or services ("add-ons") without their authorization.

The State moves for summary judgment on all counts brought under CUTPA.  Because Defendants' conduct violates the Federal Trade Commission ("FTC") Act, it also violates CUTPA, which mirrors the FTC Act. Therefore, for efficiency, the State adopts the relevant sections of the Memorandum in Support of Plaintiff FTC's Memorandum for Summary Judgment ("FTC's Memo"), and focuses here on the relief sought by the State pursuant to CUTPA.

Defendants' egregious conduct, which persisted for years despite consumer complaints and notice from third parties and law enforcement, warrants injunctive relief to ensure consumers are not harmed again. Monetary relief also is warranted to redress the large number of consumers who suffered losses due to Defendants' misconduct. Lastly, because Defendants knew or should

ORAL ARGUMENT NOT REQUESTED

have known their conduct was unlawful, Defendants should be found liable for civil penalties with an amount to be determined at trial.

The State submits that the undisputed facts warrant summary judgment in favor of the Plaintiffs including an injunction, monetary relief for consumers, and civil penalties.

## II.     STATEMENT OF UNDISPUTED FACTS

The State herein incorporates the Plaintiffs' Joint Local Rule 56(a)1 Statement of Undisputed Material Facts and the summary set forth in Section II of the FTC's Memo as if fully set forth herein.

## III.     THE STATE IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIMS

Summary judgment is appropriate where "there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *FTC v. LeanSpa, LLC*, No. 3:11-CV-1715, 2015 WL 1004240, at *8 (D. Conn. Mar. 5, 2015), *rev'd on other grounds*, *FTC v. LeadClick Media, LLC*, 838 F.3d 158 (2d Cir. 2016) (quoting *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009)). The moving party bears the burden of demonstrating that no genuine issue of material fact exists, and the Court must construe evidence in the light most favorable to the nonmoving party and draw all inferences in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). Where, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party," no genuine disputes of material fact exists, and summary judgment is appropriate. *FTC v. RCG Advances, LLC*, 695 F. Supp. 3d 368, 381 (S.D.N.Y. 2023) (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).

ORAL ARGUMENT NOT REQUESTED

Here, the undisputed facts show that Defendants engaged in a variety of deceptive and unfair practices and persisted in this misconduct despite receiving consumer complaints, consumer lawsuits, compliance audits, government investigations, and this lawsuit. The undisputed facts also show that Defendants knew or should have known that their conduct was unfair or deceptive in violation of § 42-110b.

## A.    The undisputed facts show that MCN violated CUTPA.

The undisputed facts show that the same conduct by MCN that violated the FTC Act also violated CUTPA. Under Section 42-110b(a), "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). "[A] violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy." *Ulbrich v. Groth*, 310 Conn. 375, 409 (2013). CUTPA "is interpreted consistently with the federal statute," and courts' analysis of the FTC Act "appl[y] with equal force" to CUPTA. *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 167 n.4 (2d Cir. 2016).[1]

An act or practice is deceptive under CUTPA "if three requirements are met." *Caldor, Inc. v. Heslin*, 215 Conn. 590, 597 (1990), *cert. denied*, 498 U.S. 1088 (1991). "First, there must be a representation, omission, or other practice likely to mislead consumers. Second, the consumers must interpret the message reasonably under the circumstances. Third, the misleading representation, omission, or practice must be material – that is, likely to affect consumer decisions or conduct." *Id*. (quoting *Figgie International, Inc.*, 107 F.T.C. 313, 374 (1986)). "Deception under CUTPA includes a broader range of conduct than common-law claims for

---

[1] *See also* "It is the intent of the legislature that in construing [CUTPA]…the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act…as from time to time amended." Conn. Gen. Stat. § 42-110b(c). "It is the intention of the legislature that this chapter be remedial and be so construed." Conn. Gen. Stat. § 42-110b(d).

ORAL ARGUMENT NOT REQUESTED

fraud or misrepresentation and does not require proof of intent." *Edwards v. N. Am. Power & Gas, LLC*, 120 F. Supp. 3d 132, 141 (D. Conn. 2015).

"Under CUTPA, the Commissioner of Consumer Protection is authorized to 'establish by regulation acts, practices or methods which shall be deemed to be unfair or deceptive in violation of subsection (a) of this section.'" *Togridis v. Soletech, Inc*., No. X08-CV-166029467, 2018 WL 5099751, at *3 (Conn. Super. Ct. Sept. 28, 2018) (quoting Conn. Gen. Stat. § 42-110b(c)). Here, the Commissioner has established a series of regulations that govern auto dealerships. *See* Conn. Agency Reg. § 42-110b-28 *et seq*.

       *1. Count VII: MCN's Deceptive Price Representations*

The State herein incorporates and relies on the FTC's analysis of its parallel count for MCN's deceptive price representations, Count I. *See* FTC's Memo Part III.A.1.

       *2. Count VIII: MCN's Deceptive Certification Claim*

The State herein incorporates and relies on the FTC's analysis of its parallel count for MCN's deceptive certification claim, Count II. *See* FTC's Memo Part III.A.2.

       *3. Count IX: MCN's Deceptive Fee and Add-on Representations*

The State herein incorporates and relies on the FTC's analysis of its parallel count for MCN's deceptive fee and add-on representations, Count III. *See* FTC's Memo Part III.A.3.

       *4. Count X: MCN's Deceptive Representations Regarding Authorization of Charges*

The State herein incorporates and relies on the FTC's analysis of its parallel count for MCN's deceptive representations regarding authorization of charges, Count IV. *See* FTC's Memo Part III.A.4.

       *5. Count XI: MCN's Deceptive State Registration Fee Representations*

ORAL ARGUMENT NOT REQUESTED

The State herein incorporates and relies on the FTC's analysis of its parallel count for MCN's deceptive state registration fee representations, Count V. *See* FTC's Memo Part III.A.5.

6. *Count XII: MCN's Per Se Violations of Conn. Agency Reg. § 42-110b-18(c)*

General Statutes § 42-110b(c) authorizes the Commissioner of the Department of Consumer Protection ("DCP") to establish by regulation acts, practices or methods which shall be deemed to be unfair or deceptive in violation of CUTPA. One such practice deemed to be a *per se* CUTPA violation is that "[i]t shall be an unfair or deceptive act or practice to . . . (c) [m]isrepresent the . . . certification of merchandise or services . . . ." Conn. Agency Reg. § 42-110b-18(c).

As described in the FTC's analysis of MCN's liability for Count II – MCN's deceptive certification claim, as incorporated herein – MCN represented certain vehicles were "certified" in its advertisements when such vehicles in fact did not include the limited manufacturer warranty associated with a "certified" vehicle, in violation of Conn. Agency Reg. § 42-110b-18(c). *See* FTC's Memo Part III.A.2; SF ¶¶ 24-29, 89-90. In addition to meeting the State's deception standard under *Caldor, Inc.*, 215 Conn. at 597, MCN's representation of its CPO vehicles as "certified" in advertisements when they were not, in fact, certified directly violates the plain language of § 42-110b-18(c). MCN's conduct, therefore, constitutes a *per se* CUTPA violation.

7. *Count XIII: MCN's Per Se Violations of Conn. Agency Reg. § 42-110b-22*

DCP regulations provide that "[w]hen an offer is made in an advertisement and there is a material contingency, condition or limitation on the offer, it shall be an unfair or deceptive act or practice to fail to conspicuously state such contingency, condition or limitation reasonably adjacent to the offer." Conn. Agency Reg. § 42-110b-22.

ORAL ARGUMENT NOT REQUESTED

The State herein incorporates the FTC's analysis for MCN liability relating to Count III – MCN's deceptive fee and add-on representations. *See* FTC's Memo Part III.A.3.  In its advertisement of vehicles, MCN did not conspicuously state in a manner that was reasonably adjacent to its advertisements that such offers were contingent or conditioned upon payment of fees related to certification and add-ons in violation of Conn. Agency Reg. § 42-110b-22. SF ¶¶ 26-30, 45, 63-64, 69-71. The omission of these conditions on the advertised offer constitutes a *per se* violation of CUTPA under § 42-110b-22.

### 8. Count XIV: MCN's Per Se Violations of Conn. Agency Reg. § 42-110b-28(b)(1)

DCP regulations provide that "[i]t shall be an unfair or deceptive act or practice for a new car dealer or used car dealer to fail to sell or lease, or refuse to sell or lease, a motor vehicle in accordance with any terms or conditions which the dealer has advertised, including, but not limited to, the advertised price." Conn. Agency Reg. § 42-110b-28(b)(1). Section 42-110b-28(b)(1) specifically prohibits a used car dealer from refusing to sell a vehicle in accordance with the terms or conditions that have been advertised, including, but not limited to, the advertised price. *Freeman v. A Better Way Wholesale Autos, Inc*., 174 Conn. App. 649, 663-64, *cert. denied*, 327 Conn. 927 (2017); *Hernandez v. Apple Auto Wholesalers of Waterbury LLC*, 460 F. Supp. 3d 164, 182-83 (D. Conn. 2020).

The State herein incorporates the FTC's analysis for MCN liability relating to Count I, MCN's deceptive price representations, and Count II, MCN's deceptive certification claim. *See* FTC's Memo Parts III.A.1-2. As supported by the FTC's analysis for Count I, MCN failed to sell vehicles in accordance with the advertised price. SF ¶ 68. Additionally, as supported by the FTC's analysis for Count II, MCN failed to sell vehicles it advertised as "certified" with the

ORAL ARGUMENT NOT REQUESTED

limited warranty included in the Nissan Certification. SF ¶¶ 89-90. These actions constitute *per se* violations of CUTPA under the express language of § 42-110b-28(b)(1).

       9.   *Count XV: MCN's Per Se Violations of Conn. Agency Reg. § 42-110b-28(b)(6)*

Section 42-110b-28(b)(6) of the DCP regulations provides that "[i]t shall be an unfair or deceptive act or practice for a new car dealer or used car dealer to advertise the price for the sale of any motor vehicle unless the stated price in such advertisement includes the federal tax, the cost of delivery, dealer preparation and any other charges of any nature, except any state or local tax or registration fees, or any dealer conveyance fee or processing fee as defined by section 14-62 of the Connecticut General Statutes."

The State herein incorporates the FTC's analysis for MCN liability relating to Count I, MCN's deceptive price representations, and Count III, MCN's deceptive fee and add-on representations. *See* FTC's Memo Parts III.A.1,3. MCN's advertised prices did not in fact include the certification charges and add-on fees that MCN represented to be required to purchase the vehicle. SF ¶¶ 24-25, 37-38, 45, 63-64, 68-72. To the extent that MCN failed to include these fees, which were represented to consumers as mandatory, in the advertised prices of the vehicle, MCN violated § 42-110b-28(b)(6).

      10. *Count XVI: MCN's Per Se Violations of Conn. Agency Reg. § 42-110b-28(b)(17)*

Section 42-110b-28(b)(17) of the DCP regulations provides that "[i]t shall be an unfair or deceptive act or practice for a new car dealer or used car dealer to make any representation or statement of fact in an advertisement if the dealer knows or should know that the representation or statement is false or misleading or if the dealer does not have sufficient information upon which a reasonable belief in the truth of the representation or statement could be based."

ORAL ARGUMENT NOT REQUESTED

The State herein incorporates the FTC's analysis for MCN liability relating to Count I, MCN's deceptive price representations, and Count II, MCN's deceptive certification claim. *See* FTC's Memo Parts III.A.1-2. MCN included prices in its advertisements when it knew or should have known that the advertised price did not include certification and add-on fees that MCN required with the purchase of their vehicles.  SF ¶¶ 24-25, 37-38, 45, 63-64, 68-72. Additionally, MCN represented certain vehicles were "certified" in its advertisements when such vehicles, in fact, did not include the limited manufacturer warranty associated with a certified vehicle. SF ¶¶ 89-90.  Accordingly, MCN violated § 42-110b-28(b)(17), constituting a *per se* CUTPA violation.

**B.      Undisputed facts show that the Individual Defendants are liable for the corporate defendant's CUTPA violations.**

An individual is liable under CUTPA for a corporation's violations where he or she "either participated directly in the entity's deceptive or unfair acts or practices," or "had the authority to control them." *Joseph Gen. Contr., Inc. v. Cuoto*, 317 Conn. 565, 589 (2015). In determining whether an individual is liable for a corporate violation of CUTPA, the Connecticut Supreme Court looks to federal courts' interpretations of the FTC Act. *Id*. CUTPA "is interpreted consistently with the federal statute," and courts' analysis of the FTC Act "appl[y] with equal force" to CUPTA. *LeadClick Media, LLC*, 838 F.3d at 167 n.4. The State, therefore, herein incorporates and relies on the FTC's analysis for showing that there is no genuine issue of material fact relating to the Individual Defendants' liability for MCN's violations of CUTPA. *See* FTC's Memo Part III.B.

**IV.      INJUNCTIVE RELIEF, MONETARY RELIEF AND CIVIL PENALTIES ARE WARRANTED TO PREVENT AND REMEDY DEFENDANTS' CUTPA VIOLATIONS**

In light of Defendants' extensive misconduct, injunctive and monetary relief, including civil penalties, are needed to redress harmed consumers and prevent similar future harms.

ORAL ARGUMENT NOT REQUESTED

## A. Injunctive relief is warranted.

Similar to the Section 13(b) of the FTC Act, Section 42-110m(a) of CUTPA expressly authorizes a permanent injunction restraining and enjoining the continuance of the deceptive acts and practices. Conn. Gen. Stat. § 42-110m(a). As discussed in the FTC's memorandum, Plaintiffs are entitled to a permanent injunction. The Individual Defendants violated CUTPA and the FTC Act repeatedly over the course of at least five years, knew or should have known that they were violating the law, still work in the auto industry, and have the incentive to commit future violations of CUTPA and the FTC Act absent injunctive relief. FTC's Memo Section IV (citing *SEC v. Mgmt. Dynamics, Inc*., 515 F.2d 801, 807 (2d Cir. 1975); *RCG Advances, LLC*, 695 F. Supp. 3d at 396). And although MCN has ceased operating, it remains an active corporation under Connecticut law and can reopen at any time. *Id*. Parts I-II of Plaintiffs' proposed order would restrain Defendants from violating the law through the specific practices at issue or through similar practices. *FTC v. Colgate-Palmolive*, 380 U.S. 374, 395 (1965) ("[h]aving been caught violating the [FTC] Act, respondents must expect some fencing in."); *accord Jay Norris, Inc. v. FTC*, 598 F.2d 1244, 1251 (2d Cir. 1979), *cert denied*, 444 U.S. 980 (1979). Part I would prohibit Defendants from misrepresenting various material aspects of their vehicles or products. Part II would prohibit Defendants from charging any consumer without obtaining express informed consent. Part III, discussed further below, would permanently enjoin Hamadi and Alkhatib from advertising, marketing, selling, leasing, or financing any add-on product or service.

The Court has authority to issue a permanent ban. *Id*. Indeed, courts in this Circuit have frequently enjoined future participation in a particular line of business. *See, e.g., RCG Advances*, 695 F. Supp. 3d at 396-97 (ban from participating in debt collection or merchant cash advances);

ORAL ARGUMENT NOT REQUESTED

*FTC v. Shkreli*, 581 F. Supp. 3d 579, 639 (S.D.N.Y. 2022), *aff'd*, 2024 WL 1026010 (2d Cir. Jan. 23, 2024), *cert. denied*, 145 S. Ct. 171 (2024) (pharmaceutical industry ban); *FTC v. Instant Response Sys., LLC*, No. 13-976, 2015 WL 1650914, at *10 (E.D.N.Y. Apr. 14, 2015) (medical alert goods or services ban); *FTC v. Bronson Partners, LLC*, 674 F. Supp. 2d 373, 393–94 (D. Conn. 2009), *aff'd*, 654 F.3d 359, 375 (2d Cir. 2011) (weight loss products ban); *FTC v. Five-Star Auto Club, Inc*., 97 F. Supp. 2d 502, 536-37 (S.D.N.Y. 2000) (multi-level marketing ban). The Second Circuit has affirmed such relief. *FTC v. Fed. Check Processing*, No. 14-122, 2016 WL 5940485, at *7 (W.D.N.Y. Oct. 13, 2016), *aff'd sub nom. FTC v. Moses*, 913 F.3d 297 (2d Cir. 2019) (banning defendants from engaging in debt collection); *FTC v. Verity Int'l, Ltd*., 335 F. Supp. 2d 479, 500 (S.D.N.Y. 2004) (imposing "broad permanent injunction" barring defendants from offering audiotext or videotext services following trial), *aff'd*, 443 F.3d 48, 65 (2d Cir. 2006), *cert. denied*, 549 U.S. 1278 (2007).

The Court should exercise this authority to ban Hamadi and Alkhatib. Hamadi and Alkhatib's repeated lies to consumers, the seriousness of the harm they inflicted on them, their persistent misconduct despite complaints and third-party audits, and, in Alkhatib's case, intimidation and physical violence when consumers raised questions about add-ons, justify this injunctive relief. *See RCG Advances, LLC*, 695 F. Supp. 3d at 396–97 (imposing a ban on defendant making merchant cash advances and debt collection given "the seriousness of the harm he inflicted on consumers, his continuing denial of his role in the misconduct, and the sheer number of times [defendant] engaged in misconduct"); *Bronson Partners*, 674 F. Supp. 2d at 393 (finding appropriate where violations were "obvious and widespread" and there was "no indication that [the defendant's] newest endeavor" in the same field "will not engage in similar deceptive advertising practices.").

ORAL ARGUMENT NOT REQUESTED

### 1. Michael Hamadi

Hamadi spent years running MCN and overseeing its daily operations, including the repeated lies that extracted millions of dollars from consumers. ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████ This lack of any contrition in the face of repeated evidence of wrongdoing strongly suggests that Hamadi will, if allowed to continue work in the vehicle sales industry, continue to mislead consumers for his own financial gain.

### 2. Aiham Alkhatib

For years, Alkhatib repeatedly lied to consumers that the bank or some third-party required them to purchase add-ons, or crammed add-on charges into consumers' contracts without them knowing or by telling consumers the add-ons were free. SF ¶ 149; FTC's Memo Part III.B.4. As one example, Jefferson Barbabosa visited MCN and decided to purchase a pre-owned certified 2019 Nissan Rogue. PX08 (Barbabosa Dec. ¶ 2). After he finished with the sales department, Barbabosa had the misfortune of meeting with Alkhatib. Alkhatib told him that the vehicle came with a six-month oil change package and 100,000-mile extended warranty because

ORAL ARGUMENT NOT REQUESTED

the car was certified. *Id*. ¶¶ 3, 6. Alkhatib did not, however, tell Mr. Barbabosa that Alkhatib had

added to the sales contract $2,990 for a vehicle service contract and $1,100 for a prepaid

maintenance agreement, even though those contracts provide similar benefits as his CPO limited

warranty, and even though Barbabosa had not agreed to these extra charges. *Id*. ¶ 7, Att. A at 12,

24. Alkhatib also charged Barbabosa for Total Loss Protection ("TLP"), even though TLP is not

disclosed anywhere on the paperwork Barbabosa received from Alkhatib, *id*. ¶ 7, Att. A, or on

"Add-on Menu" and "Verification Waiver" documents he signed. PX42 (Barbabosa Tr. at Exs. 5-

6). Alkhatib also slipped a $1,100 CPO fee into the "Cash Price" of the vehicle, even though

MCN advertised the vehicle as already certified. *See* PX08 (Barbabosa Dec. ¶ 7, Att. A at 5);

PX21 (Miles Dec. ¶ 28). Ultimately, Barbabosa ended up paying more than $4,000 in extra add-

on charges that were unauthorized and not even disclosed. PX08 (Barbabosa Dec. ¶ 8). Many

other consumers had similar experiences dealing with Alkhatib. SF ¶ 149; FTC's Memo Part

III.B.4.

██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████ Thus, Alkhatib knew or should have known that he wasn't disclosing add-ons

adequately.

Alkhatib also intimidated and demeaned multiple female customers. SF ¶ 65. For

example, Paige Simonds recalls of her conversation with Alkhatib:

ORAL ARGUMENT NOT REQUESTED

> "[e]very time that we would talk about an add-on I would immediately say no, just because I didn't want to spend any more money….But I would say no, and then he would just sit there and stare at me. And I would say no really I'm good….He would explain it again, and then I'd say no again, and then he would just stare at me, and we would sit there in silence for while until eventually we moved on."

PX48 (Simonds Tr. at 57:7-20). Likewise, Heidi Rodriguez cried when Alkhatib spoke with her because of his demeaning tone. PX41 (H. Rodriguez Tr. at 28:15-22) ("When I spoke with him, I literally was crying because of how he was speaking to me.…I really should not have somebody to speak with me -- speaking at me the way he was. It was kind of like -- almost like a demeaning way to speak to somebody."). As one consumer warned, "this man is a danger and has a temper that he is clearly unable to control . . . . [Alkhatib] is poisoning the reputation of Nissan and having employees who belittle women is very bad for business." SF ¶ 65.

The police were called to the dealership multiple times to break up disputes between Alkhatib and customers. ████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████

***

A ban on advertising, promoting, marketing, selling, leasing, or financing add-ons for any motor vehicle dealership is more than justified for these two Defendants.

**B. Monetary relief is necessary to redress consumers for their harm.**

Section 42-110m(a) of the Connecticut General Statutes provides in relevant part that "whenever the commissioner has reason to believe that any person has been engaged or is engaged in an alleged violation of [CUTPA] said commissioner may . . . request the Attorney

ORAL ARGUMENT NOT REQUESTED

General to apply . . . for an order directing restitution . . . . The court may award the relief applied for or so much as it may deem proper . . . ." Conn. Gen. Stat. § 42-110m(a). It is, therefore, within the District Court's discretion to order restitution pursuant to § 42-110m(a) after a finding that the defendants violated CUTPA. *State v. Caldwell*, 246 Conn. 721, 743-44 (1998) (affirming trial court's award for restitution pursuant to § 42-110m(a) after finding that defendant's conduct constituted a deceptive trade practice in violation of CUTPA).

Federal precedent provides guidance for how to calculate restitution pursuant to the FTC Act in determining the appropriate method of calculating restitution pursuant to § 42-110m(a). *See* Conn. Gen. Stat. § 42-110b(b) ("It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the FTC and the federal courts to section 5(a)(1) of the FTC Act (15 USC 45(a)(1)), as from time to time amended."); *see also Associated Investment Co. L.P. v. Williams Associates IV*, 230 Conn. 148, 156 (1994) (explaining that CUTPA is modeled after FTC Act, "which serves as a lodestar for interpretation of the open-ended language of CUTPA"). "[CUTPA] is interpreted consistently with the federal statute," and courts' analysis of the FTC Act "appl[y] with equal force" to CUPTA. *LeadClick Media, LLC*, 838 F.3d at 167 n.4 (2d Cir. 2016).

Federal courts have adopted a two-step burden-shifting framework for calculating monetary relief pursuant to the FTC Act. *Verity Int'l, Ltd*., 443 F.3d at 67. This framework requires the State to first show that its calculation reasonably approximates the amount of restitution, after which the burden shifts to the Defendants to show, if it can, that those figures are inaccurate. *Id.*; *FTC v. Direct Marketing Concepts, Inc*., 624 F.3d 1, 15 (1st Cir. 2010). "Once a reasonable approximation of damages has been provided, the defendant has an opportunity to demonstrate that the figures are inaccurate. . . . Any fuzzy figures due to a defendant's uncertain

bookkeeping cannot carry a defendant's burden to show inaccuracy." *Id*. (citing *FTC v. Febre*, 128 F.3d 530, 535 (7th Cir. 1997).

The State seeks $18,712,116 in restitution for the harm that Defendants have caused consumers. Under longstanding precedent interpreting the FTC Act, the FTC, and thus the State,[2] need not show actual reliance by consumers in calculating consumer redress: the State is entitled to a presumption of reliance upon showing that "(1) the defendant made material misrepresentations or omissions that were of a kind usually relied upon by reasonable prudent persons; (2) the misrepresentations or omissions were widely disseminated; and (3) consumers actually purchased the defendants' products." *FTC v. BlueHippo Funding, LLC*, 762 F.3d 238, 244 (2d Cir. 2014); *see also FTC v. Figgie Int'l, Inc*., 994 F.2d 595, 605-606 (9th Cir. 1993) (affirming district court's use of presumption of actual reliance in calculating consumer redress at summary judgment after FTC proved that defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased defendant's product).

Here, the State is entitled to a presumption of consumer reliance because Plaintiffs have shown that Defendants made material misrepresentations that were of a kind usually relied upon by reasonable prudent persons, that the misrepresentations or omissions were widely disseminated, and that consumers purchased Defendants' vehicles and were charged for add-ons. *See* FTC Memo. at Part III.A.

"Once the [State] makes a showing sufficient to trigger this presumption, the district court must calculate damages to ensure that all of the consumers who were presumed to have relied on the defendant's misrepresentations receive full compensation." *BlueHippo*, 762 F.3d at 244 (internal quotation omitted). The starting point for this calculation is "defendants' gross

---

[2] CUTPA "is interpreted consistently with the federal statute," and courts' analysis of the FTC Act "appl[y] with equal force" to CUPTA. *LeadClick Media, LLC*, 838 F.3d at 167 n.4.

<u>ORAL ARGUMENT NOT REQUESTED</u>

15

receipts derived from such contumacious conduct." *Id.* at 245. The burden then shifts to defendants to put forth evidence showing that certain amounts should offset the sanctions assessed against them. *Id.* (internal quotation omitted).

Here, the State calculates the amount of consumer injury stemming from Defendants MCN, Dibre, Soboh, and Hamadi's violations as $18,712,116, jointly and severally, and the amount of consumer injury stemming from Defendants' Alkhatib, Chmielinski, and Mojica's violations as $4,888,658, jointly and severally.[3] The $18,712,116 figure represents the total amount that Defendants MCN, Dibre, Soboh, and Hamadi charged consumers for their vehicles *above* the price Defendants advertised for those vehicles, after accounting for required state sales tax and registration costs (Count VII of the Complaint). SF ¶ 174. The $4,888,658 figure represents the total amount that Defendants Alkhatib, Chmielinski, and Mojica charged consumers in fees related to certification on vehicles that MCN advertised as already certified and that they charged consumers for TLP (Counts IX and X of the Complaint). SF ¶¶ 175, 177. The State arrived at these figures by using Defendants' own data and data from a third-party add-on provider. Thus, unless Defendants "can put forth evidence showing that certain amounts should offset the sanctions assessed against them," *BlueHippo*, 762 F.3d at 245, the State is entitled to a judgment of $18,712,116 against Defendants MCN, Dibre, Soboh, and Hamadi and $4,888,658 against Defendants Alkhatib, Chmielinski, and Mojica.

### C. Civil Penalties are warranted given Defendants' wilful conduct.

Section 42-110o(b) of CUTPA provides in relevant part: "In any action brought under section 42-110m . . . if the court finds that a person is wilfully using or has wilfully used a method, act or practice prohibited by section 42-110b, the Attorney General, upon petition to the

---

[3] The harm caused by MCN, Dibre, Soboh, and Hamadi's violations is inclusive of the harm caused by Alkhatib, Chmielinski, and Mojica's violations.

<u>ORAL ARGUMENT NOT REQUESTED</u>

court, may recover, on behalf of the state, a civil penalty of not more than five thousand dollars for each violation. For purposes of this subsection, a wilful violation occurs when . . . [t]he party committing the violation knew or should have known that his conduct was a violation of section 42-110b . . . ." Conn. Gen. Stat § 42-110o(b). An award of civil penalties pursuant to § 42-110o(b) "does not require that the defendant[s] have had actual knowledge that the practice was unfair or deceptive," only that the defendants should have known the conduct was unfair or deceptive. *Caldwell*, 246 Conn. at 743 n.13, 745 (1998); *State v. Macko*, Docket No. HHD-CV12-6031858-S, 2016 WL 4268383, at *12 (62 Conn. L. Rptr. 862) (Conn. Super. Ct. Aug. 1, 2016) (finding willfulness under CUTPA relating to dental practices because defendants knew or should have known of statutes governing practice of dentistry).[4]

### 1.   *MCN knew or should have known its conduct was unfair or deceptive*

The undisputed facts show that MCN knew or should have known that its conduct was unfair or deceptive. Parties engaged in a regulated business are presumed to know the statutes governing that business. *See Macko*, 2016 WL 4268383, at *12 (finding willfulness under CUTPA relating to dental practices because defendants knew or should have known of statutes governing practice of dentistry). The Court should therefore presume that MCN, a licensed car dealership, knew or should have known that DCP regulations prohibited false and misleading representations in advertisements. Conn. Agency Reg. § 42-110b-28. As detailed above, Conn.

---

[4] The standard for awarding civil penalties under Section 5 of the FTC Act differs from the standard for awarding civil penalties under CUTPA. Section 5 of the FTC Act requires knowledge, actual or implied, of the specific rule that the defendant has violated, and knowledge that the act or practice was deceptive. 15 U.S.C. § 45(m)(1)(A). CUTPA, on the other hand, explicitly provides that civil penalties may be awarded where "[t]he party committing the violation knew *or should have known* that his conduct was a violation of section 42-110b . . . ." (emphasis added) Conn. Gen. Stat. § 42-110o(b); *Caldwell*, 246 Conn. at 745 (holding that § 42-110o(b) "does not require that the defendant have had actual knowledge that the practice was unfair or deceptive"). The State cites to federal court case law analyzing whether civil penalties are appropriate under the FTC Act as illustrative of facts federal courts have found to support the FTC Act's higher threshold for civil penalties. If these facts would support actual knowledge under the FTC Act, such facts would certainly support CUTPA's lower threshold for civil penalties – that defendants knew or should have known.

<u>ORAL ARGUMENT NOT REQUESTED</u>

Agency Reg. § 42-110b-28(b)(1), (6), & (17) describe specific conduct in the advertising of motor vehicles that violates Conn. Gen. Stat. § 42-110b, and these regulations put MCN on notice that the specific conduct identified in the regulations violated CUTPA.

Even in the absence of a specific regulation, the undisputed facts show that MCN knew or should have known that requiring consumers to pay certification fees for cars it advertised as already certified pre-owned was deceptive. Nissan specifically prohibits its dealerships from █████████████████████████████████ and further provides in its CPO Process guide that ███████ ████████████████████████████████████████████████████████████████ ████████████████████████████ Moreover, despite advertising vehicles as certified, in many cases MCN did not report the sale of such vehicles to Nissan or pay a certification fee to Nissan, resulting in some consumers not receiving the benefits of the limited manufacturer warranty. *Id.* ¶¶ 89-90. MCN clearly knew or should have known that ████ ███████████████████████████████████████████—as set forth in its CPO Process guide—and chose to ignore that policy. It compounded its deceptive conduct in many cases by failing to report the sale of certified pre-owned vehicles to Nissan, robbing consumers of the benefits they had paid for. This evidence clearly supports a finding that MCN's conduct was willful. *See United State v. Building Inspector of America*, 894 F. Sup. 507, 521 (D. Mass. 1995) (finding defendants liable for civil penalties under Section 5 of FTC Act where defendants' violations "involved outright misstatements" on subjects "highly material" to consumers' decisions to purchase product).

MCN knew or should have known that disguising TLP as "Taxable Fees (Estimated)" on its pencils was deceptive. ████████████████████████████████████████ ████████████████████████████████████████████████████████

<span style="text-align: right">ORAL ARGUMENT NOT REQUESTED</span>

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████ Willfulness can be inferred by the

fact that MCN did not identify TLP for what it was—an optional add-on that consumers could

have chosen not to purchase if it had been properly identified—but instead presented it as a

mandatory fee.

████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████ *See United States*

*v. Lasseter*, Docket No. 3:03-1177, 2005 WL 1638735, at *5 (M.D. Tenn. June 30, 2005)

(awarding FTC civil penalties on summary judgment where individual defendant's knowledge of

underlying rule was fairly implied based on previous contact with FTC). As demonstrated in Part

II.F. of the FTC's Memo, MCN was made aware of its deceptive practices and nonetheless

continued such practices. *See* FTC's Memo II.F.

       *2. Patrick Dibre knew or should have known his conduct was unfair or deceptive*

     The undisputed facts show that Dibre knew or should have known that his conduct was

unfair or deceptive. ███████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████

███████████ Receiving and responding to inquiries from state and federal regulators

clearly shows that Dibre knew or should have known that MCN's acts and practices were

unlawful in violation of § 42-110b. *See FTC v. Romero*, 658 F. Supp. 3d 1129, 1146 (M.D. Fl. 2023) (finding defendant liable for civil penalties under FTC Act when defendant's conduct continued despite receiving notice from FTC of investigations into defendant's violations of the FTC Act). ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████ Furthermore, as an owner of a Nissan dealership, Dibre knew or should have been aware that ████████████████ ████████████████████████████████████ and further prohibits dealerships from ██████████████████████ *Id*. ¶ 87.

Lastly, as an owner of a dealership in Connecticut, Dibre knew or should be aware of the DCP regulations governing the Standards for the Advertising and Selling of Motor Vehicles within Connecticut. Conn. Agency Reg. § 42-110b-28. SF ¶¶ 96, 126; PX23 (citing § 42-110b-28 in Complaint). Specifically, that Conn. Agency Reg. § 42-110b-28(b)(6) prohibits dealerships from advertising the price for the sale of any motor vehicle unless the stated price in such advertisement includes all charges of any nature except any state or local tax or registration fees, or any dealer conveyance fee or processing fee. *See FTC v. Bonnie & Co. Fashions, Inc.,* No. CIV. 90-4454 (HLS), 1992 WL 314007, at *7 (D.N.J. Sept. 28, 1992) (finding knowledge of an FTC Rule was "fairly implied" at summary judgment where defendant had worked in the relevant "industry her entire adult life").

     *3. Brian Soboh knew or should have known his conduct was unfair or deceptive*

The undisputed facts show that Soboh knew or should have known that his conduct was unfair or deceptive. ████████████████████████████████████████

████████████████████████████████████████

█ew or █████████████████████████████████████████████████████

███████████████████████████████████████████████. *See*

*Romero*, 658 F. Supp. 3d at 1146 (finding defendant liable for civil penalties under FTC Act

when defendant's conduct continued despite receiving notice from FTC of investigations into

defendant's violations of the FTC Act).

Like Dibre, as an owner of a Nissan dealership, Soboh knew or should have been aware

that ████████████████████████████████████████████████████

████████████████████████ and further prohibits dealerships from ███████████

████████████████████████████████████████████████████

█████████████████████ ██████████████████████████████

████████████████████████████████████████████████████

█████████████ Lastly, as an owner of a dealership in Connecticut, Soboh knew or should be

aware of the Conn. Agency Reg. § 42-110b-28(b)(6). SF ¶¶ 96, 126, 136; PX23 (citing § 42-

110b-28 in Complaint). ██████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████ *See Bonnie & Co. Fashions, Inc.,* 1992 WL 314007, at *7 (finding

knowledge of an FTC Rule was "fairly implied" at summary judgment where defendant had

worked in the relevant "industry her entire adult life").

> **4. *Michael Hamadi knew or should have known his conduct was unfair or deceptive***

The undisputed facts show that Hamadi knew or should have known that his conduct was

unfair or deceptive. As detailed in the FTC's memorandum, Hamadi directly participated and had

authority to control all of MCN's unfair and deceptive practices. FTC Memo Part III.B.3; SF ¶

138. As the individual in charge of and directly participating in the unfair and deceptive

practices, Hamadi knew or should have known that representing certain certification fees and add-ons as required was a deceptive practice in violation of § 42-110b. *See FTC v. Jones*, No. SA CV 17-0058-DOC, 2017 WL 11198503, at *6 (C.D. Cal. May 25, 2017) (finding individual defendant liable for civil penalties under FTC Act where defendant "was a highly culpable ring leader" of unfair and deceptive practices); *see also United States v. Prochnow*, Docket No. 1:02-CV-0917-JOF, 2005 WL 8154273, at *6 (N.D. Ga. Dec. 2, 2005) (finding that knowledge of deceptive conduct can be imputed on individual defendant who had authority to control and did in fact control the defendant company's operations). ███████████████████████

███████████████████████████████████████████████

███████████████████

     Furthermore, as general manager of a Nissan dealership, Hamadi knew or should have been aware that Nissan █████████████████████████████████ ████████████████████ and further prohibits dealerships from █████ ██████████████████████ ████████████████████ ████████████████████████████████████ ██████████████████████████ ██████████████████████████ ████████████████████████████████ ██████████████████████ Lastly, as a general manager of a dealership in Connecticut, Hamadi knew or should have been aware of Conn. Agency Reg. § 42-110b-28(b)(6). SF ¶¶ 96, 136; PX23 (citing § 42-110b-28 in Complaint). ███████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████

5.  *Aiham Alkhatib knew or should have known his conduct was unfair or deceptive*

The undisputed facts show that Aiham Alkhatib knew or should have known that his conduct was unfair or deceptive. Like Hamadi, Alkhatib committed many of the unfair and deceptive practices himself: He personally crammed charges into customers' sales contracts for add-ons they hadn't agreed to, and personally deceived consumers by falsely claiming that they were required to purchase certain add-ons either to obtain financing, to meet state law requirements, or simply because the add-on was supposedly mandatory. SF ¶ 149; FTC's Memo Part III.B.4. Alkhatib knew or should have known that this conduct was deceptive in violation of Conn. Gen. Stat. § 42-110b. *See Jones*, 2017 WL 11198503, at *6 (finding individual defendant liable for civil penalties under FTC Act where defendant "was a highly culpable ring leader" of unfair and deceptive practices).

Furthermore, as finance manager of a Nissan dealership, Alkhatib knew or should have been aware that Nissan ███████████████████████████████████████████████ ███████████████████████████████████ and further prohibits dealerships from █████████ ██████████████████████████████ ███████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████████ Lastly, as a finance manager of a dealership

ORAL ARGUMENT NOT REQUESTED

23

in Connecticut, Alkhatib knew or should have been aware of Conn. Agency Reg. § 42-110b-28(b)(6). ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

6. *Matthew Chmielinski & Freddy Mojica knew or should have known their conduct was unfair or deceptive*

The undisputed facts show that both Matthew Chmielinski and Freddy Mojica as the sales managers of MCN knew or should have known their conduct was unfair or deceptive.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████ Chmielinski and Mojica clearly knew or should have known that their conduct was deceptive. *See Building Inspector of America*, 894 F. Sup. at 521 (finding defendants liable for civil penalties under Section 5 of FTC Act where defendants' violations "involved outright misstatements" on subjects "highly material" to consumers' decisions to purchase product).

Furthermore, as sales managers of a Nissan dealership, Chmielinski and Mojica knew or should have known that Nissan ████████████████████████████████

████████████████████████████████ and further prohibits dealerships from ████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████ Lastly, as sales managers of a dealership in Connecticut, Chmielinski and Mojica knew or should have been aware of Conn.

ORAL ARGUMENT NOT REQUESTED

Agency Reg. § 42-110b-28(b)(6). ████████████████████████

████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

████████████████████

V.    **CONCLUSION**

For the foregoing reasons, the State respectfully requests that the Court grant it summary judgment on Counts VIII–X and XVII against all Defendants; Count VII against Chase Nissan, Patrick Dibre, Refaat Soboh, and Michael Hamadi; Count XI against Chase Nissan, Patrick Dibre, and Refaat Soboh, Michael Hamadi, and Aiham Alkhatib; and Counts XII–XVI against Chase Nissan. The State also requests that the Court issue the proposed injunction, and award monetary relief. Lastly, the Court can and should award civil penalties – the State requests the Court award civil penalties either at the discretion of the Court upon a finding of willfulness at summary judgment or after an order of post-judgment discovery and a later proceeding.

Dated: April 21, 2025                         Respectfully submitted,

                                             PLAINTIFF

                                             STATE OF CONNECTICUT
                                             WILLIAM TONG
                                             ATTORNEY GENERAL

                              `              /s/ *Jonathan J. Blake*
                                             Jonathan J. Blake (ct22321)
                                             Michael Nunes (ct31522)
                                             Assistant Attorneys General
                                             Office of the Attorney General
                                             165 Capitol Avenue

                                             ORAL ARGUMENT NOT REQUESTED

Suite 4000
Hartford, CT 06106
T: (860) 808-5400
F: (860) 808-5593
Michael.Nunes@ct.gov
Jonathan.Blake@ct.gov

*Counsel for the Plaintiff*
*State of Connecticut*

ORAL ARGUMENT NOT REQUESTED

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record by email on April 21, 2025.

/s/ *Jonathan J. Blake*

Jonathan J. Blake (ct2232)
Michael Nunes (ct31522)
Assistant Attorneys General
Office of the Attorney General
165 Capitol Avenue
Suite 4000
Hartford, CT 06106
T: (860) 808-5400
F: (860) 808-5593
Michael.Nunes@ct.gov
Jonathan.Blake@ct.gov

*Counsel for the Plaintiff*
*State of Connecticut*

ORAL ARGUMENT NOT REQUESTED