**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | : | |
| and STATE OF CONNECTICUT, | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:24-CV-00012 (JCH) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| CHASE NISSAN LLC, a limited liability | : | |
| company, also d/b/a MANCHESTER CITY | : | |
| NISSAN, et al., | : | MARCH 16, 2026 |
|     Defendants. | : | |

**RULING ON MOTION TO PRECLUDE TESTIMONY OF DR. JESSICA BROOME**
**(DOC. NO. 196).**

## I.    INTRODUCTION

Defendants Chase Nissan, LLC d/b/a Manchester City Nissan, Patrick Dibre,

Brian Soboh, Michael Hamadi, Matthew Chmielinski, Freddy Mojica, and Aiham Alkhatib

("defendants"), bring this Motion against the plaintiffs Federal Trade Commission

("FTC") and the State of Connecticut ("State") (together, "plaintiffs") to preclude the

testimony and opinion of Dr. Jessica Broome, a survey expert.  See Motion and

Memorandum of Law in Support of Defendants' Motion to Preclude Testimony and

Opinions of Dr. Jessica Broome ("Mot. to Preclude") (Doc. No. 196-1).  The plaintiffs

oppose the Motion.  See Memorandum in Opposition to Defendants' Motion to Preclude

Testimony and Opinions of Dr. Jessica Broome ("Pltf's Opp'n") (Doc. No. 208).  The

defendants submitted a reply to further support their Motion.  See Reply in Further

Support of Defendants' Motion to Preclude Testimony and Opinions of Dr. Jessica

Broome ("Def's Reply") (Doc. No. 209).

For the reasons stated below, the court denies the Motion to Preclude.

1

## II.    BACKGROUND

The plaintiffs, State and FTC, sued Chase Nissan LLC, d/b/a Manchester City Nissan ("MCN) and multiple individuals, alleging that MCN, along with others, acted together to defraud thousands of consumers.  See Pltf's Opp'n at 2.  The plaintiffs allege that the defendants charged consumers for additional products or services ("add-ons") that consumers never agreed to purchase.  Id.  The plaintiffs claim the defendants effected unauthorized charges in multiple ways, including add-ons inserted into unaware consumers' closing documents or charging consumers for add-ons that MCN told consumers were free.  Id.  The plaintiffs retained Dr. Jessica Broome to conduct a customer experience survey about add-on products or services offered at MCN ("Broome Survey").  See Mot. to Preclude at 1.  The defendants make no challenges to Dr. Broome's qualifications as an expert on surveys.  See Pltf's Opp'n at 3.  Dr. Broome was tasked with examining whether (1) MCN charged customers extra for add-ons that they did not agree to pay extra for; and (2) for those customers who did agree to pay extra for an add-on, whether MCN led those customers to believe they were required to purchase the add-on.  Id.

Dr. Broome designed and conducted a Survey directed towards adults who purchased a vehicle and add-ons from MCN between January 1, 2019, and December 31, 2023.  See Mot. to Preclude at 2.  The Survey was conducted from May 28, 2024, to June 24, 2024.  Id. at 5.  Potential respondents in the population were contacted by email, phone, or direct mail to complete the Survey online or in a telephone interview. Id. at 6.

## III.    LEGAL STANDARD

Expert testimony is admissible under Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. Rules of Evid. 702.  The District Court acts as a gatekeeper, charged with the task of deciding whether the expert's testimony satisfies Rule 702's general requirements. See Daubert v. Merrell Dow Pharms., 509 U.S. 579, 113 (1993).  In defining the gatekeeping role of the District Court, the Second Circuit has distilled Rule 702's requirements into three broad criteria: (1) qualifications, (2) reliability, and (3) relevance and assistance to the trier of fact.  See Nimely v. City of New York, 414 F.3d 381, 396-97 (2d Cir. 2005).

If an expert meets the threshold requirement of qualification, the court must determine whether the expert's testimony itself is reliable.  In Daubert, the Supreme Court identified several factors that may be considered in assessing reliability:

> (1) whether a theory or technique "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) a technique's "known or potential rate of error," and "the existence and maintenance of standards controlling the technique's operation'" and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community.

See Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002) (quoting Daubert, 509 U.S. at 593–94 (internal quotations and citations omitted)). These factors, however, do not constitute a "definitive checklist or test."  See Kumho

Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999).  Instead, the inquiry is a flexible one and must be "tied to the facts of a particular case" with attention to "the nature of the issue, the expert's particular expertise, and the subject of his testimony."  Id. Further, is bears noting that the Second Circuit has endorsed a broad standard of admissibility for expert testimony.  See, generally, Do No Harm v. Pfizer Inc., 126 F.4th 109 (2d Cir. 2025).

## IV.    DISCUSSION

The defendants argue that the methodology Dr. Broome applied to her survey is significantly flawed, and therefore, the results and conclusions are insufficiently probative.  See Mot. to Preclude at 12.  Specifically, they argue that (1) the Broome Survey included misleading questions; (2) the Survey disclosed the FTC as the sponsor and the purpose of the survey; (3) that respondents were able to change their previous answers; and (4) that the population selected was underinclusive.  Id. at 12-13.

### A. Question A1 is Clear and Unambiguous

First, the defendants argue that Question A1 is misleading and ambiguous and thus the survey is unreliable.  See Mot. to Preclude at 12-13.  The defendants assert that this question is a crucial question and, because it is sufficiently ambiguous, it may be a basis for rejecting the survey.  Id. at 14.  Question A1 states: "Did you agree to pay extra for any of the following add-on products or services when purchasing this vehicle?"  See Id. at 15, citing Broome Survey at ¶ 29.  Respondents were then presented with a list of eleven possible add-on products and services and, for each, asked to answer "Yes," "No," or "Not Sure."  Id.  Based upon the responses received to Question A1, Dr. Broome concluded that "Manchester City Nissan charged the vast majority of customers surveyed (88%) for at least one add-on that they did not agree to

4

pay extra for or led customers to believe that the add-on was required rather than optional." Id. Dr. Broome further concluded, based upon respondents' answers to Question A1, that "Manchester City charged a substantial percentage of customers surveyed (42%) for multiple add-ons that they did not agree to pay extra for or led customers to believe that the add-ons were required rather than optional." Id. The defendants assert that this is an ambiguous question and unclear about the very thing that the survey was trying to measure: whether consumers paid for an add-on product or service without agreeing to do so. See Mot. to Preclude at 15. The defendants claim that Dr. Broome herself acknowledged those flaws in her deposition. Id. Thus, the defendants argue that, since the basis of her survey is flawed, the conclusions regarding consumer practices are undermined. Id. at 18.

The plaintiffs assert that Dr. Broome's survey is clear and follows reliable survey methodology. See Pltf's Opp'n at 6. The plaintiffs claim that Dr. Broome conducted cognitive interview pretests to ensure the survey questions were clear and understandable. Id. These tests are designed to identify ambiguous questions to be rephrased, and Dr. Broome conducted two rounds, including a probe directly asking about the phrase in question, "agree to pay extra." Id. at 7.

When an unclear question is included in a survey, it may threaten the validity of the survey by distorting the responses or by error if the respondents do not understand. See Shari Seidman Diamond, Reference Guide on Survey Research, in Reference Manual on Scientific Evidence 359, 388–89 (Fed. Jud. Ctr. & Nat'l Rsch. Council eds., 3d ed. 2011). However, there is no indication that the questions were misleading or that the respondents did not understand the question. As explained by Dr. Broome, her

5

team conducted two rounds of cognitive interviews to check the understanding of the questions. See Pltf's Opp'n at 7. After a pretest respondent completed each survey question online or over the phone, the interviewer posed a series of follow-up questions, called "probes", aimed at determining whether the survey questions were understood by respondents as intended. Id. Dr. Broome included no fewer than six cognitive interview "probes" for Question A1 to ensure that it was clear and unambiguous, including probes directly asking about the phrase: "agree to pay extra". Id. Dr. Broome agreed in her deposition that the word "extra", like any word in a survey, can be a point of potential confusion. Id. at 10. However, there is no indication that there was actual confusion. Dr. Broome asserted she followed reliable survey methodology to assess whether Question A1 engendered any actual confusion by conducting two rounds of cognitive pretesting, separate "probe" questions concerning Question A1, and the results of these interviews verified that survey questions were understood by respondents as intended. Id. Additionally, small ambiguities in surveys goes to the weight of the survey's as evidence, not to its admissibility. See Schering Corp. v. Pfizer, Inc., 189 F.3d 218, 228 (2d Cir. 1999).

B. Disclosure of the FTC as Sponsor is Consistent with Reliable Survey Methodology

Second, the defendants argue that the survey disclosed the FTC as the sponsor and thus is unreliable. See Mot. to Preclude at 7. The defendants assert that all the individuals who made up Dr. Broome's survey population knew that the FTC sought the information regarding car purchases. Id. at 20. The defendants claim that identifying the FTC as a sponsor injects potential bias into the survey by suggesting certain preferred responses. Id. Additionally, the defendants claim that the FTC had a web

6

page dedicated to their litigation against MCN, and the survey invited respondents to visit the FTC's website and Privacy Policy page. Id. at 21. Therefore, the defendants argue, these issues raise significant concerns as to the reliability of the survey. Id. at 23.

The plaintiffs assert that the survey followed correct methodology and legal best practices. See Pltf's Opp'n at 10. The plaintiffs claim that sponsorship by a governmental third party may not automatically suggest a certain kind of preferred response. Id. at 11. Additionally, the plaintiffs argue that many courts have repeatedly accepted consumer surveys that disclose the FTC as the sponsor. Id.

The plaintiffs are correct. Courts from across the country have repeatedly accepted as reliable consumer surveys that disclose the FTC as a sponsor where the surveyor has taken steps to hide the purpose of the survey. See, e.g., FTC v. Nudge, LLC, No. 19-867, 2022 WL 2132695, at *6 (D. Utah June 14, 2022); FTC v. John Beck Amazing Profits, LLC, 865 F. Supp. 2d 1052, 1065 (C.D. Cal. 2012); FTC v. Inc21.com Corp., 745 F. Supp. 2d 975, 993 n.11, 1000-03 (N.D. Cal. 2010), aff'd, 475 F. App'x 106 (9th Cir. 2012); FTC v. Kutzner, No. 16-999, 2017 WL 4685286, at *4 (C.D. Cal. Sept. 5, 2017). Dr. Broome asserted she took steps to hide the purpose of the survey. See Pltf's Opp'n at 11. The invitation included no references to litigation against MCN and stated the purpose was to learn about general car purchases over the past five years. Id. at 11-12. The survey did not focus on MCN but showed a randomized list of four local dealerships. Id. at 12. Additionally, the FTC may bring litigation before a consumer survey is published. See, e.g., FTC v. Fleetcor Techs., Inc., 620 F. Supp. 3d 1268,

7

1317 (N.D. Ga. 2022); <u>Nudge, LLC</u>, 2022 WL 2132695, at *6; <u>Kutzner</u>, 2017 WL 4685286, at *4.

C. <u>Backwards Navigation is Consistent with Reliable Survey Methodology</u>

Third, the defendants argue that the backward navigation allowed consumers to change their answers and thus is unreliable. <u>See</u> Mot. to Preclude at 12-13. The defendants claim that later questions could suggest certain conclusions regarding whether the consumer agreed to pay extra for the add-ons. <u>Id</u>. at 24. Because the consumers had the ability to navigate backwards on the survey, the responses potentially could be skewed. <u>Id</u>.

The plaintiffs reject the defense's assertion. <u>See</u> Pltf's Opp'n at 14. They point out that the defendants did not ask Dr. Broome why the online survey had backwards navigation enabled. <u>Id</u>. If the defense did ask, the plaintiffs assert, they would have been informed of the academic research supporting such a feature. <u>Id</u>.

The plaintiffs are correct. The defense presents no evidence that the backward navigation is a design flaw. <u>See generally</u> Mot. to Preclude. The defense retained a survey expert to prepare a rebuttal of Dr. Broome's work, yet they did not use their expert's opinion in their Motion. Plaintiffs argue that Dr. Broome utilized standardized and approved methodology. <u>See</u>, <u>e.g.</u>, Ron D. Hays et al., <u>The Impact of Next and Back Buttons on Time to Complete and Measurement Reliability in Computer-Based Surveys</u>, 19 Quality of Life Rsch. 1181 (2010) (presenting research supporting that a back button provides a safeguard for respondents who enter an incorrect response and does not reduce "internal consistency reliability," which is an evaluation of how well a survey or questionnaire is measuring what it is intended to measure). Dr. Broome's

8

work is consistent with reliable methodology.  Further, issues raised by the defendant would go to weight rather than admissibility.  See Schering Corp., 189 F.3d at 228

    D.  The Survey Population Selected is Consistent with Reliable Survey Methodology

Fourth, the defendants argue that the consumer population was underinclusive; thus, the survey is unreliable.  See Mot. to Preclude at 12-13.  The defendants assert that the target population was adults who purchased a vehicle from MCN between January 2019 and December 2023 and were charged for at least one add-on.  Id. at 24. The defense claim Dr. Broome pulled potential participants from lists provided to her by the FTC for all add-on transactions at MCN, and this population excludes all customers who purchased a vehicle and did not purchase an add-on.  Id.  They assert that this population, by design, intentionally excluded customers who, if included, would have greatly decreased Dr. Broome's numbers.  Id.

The plaintiffs claim that Dr. Broome's population was selected in accordance with reliable survey methodology.  See Pltf's Opp'n at 16.  The plaintiffs assert that Dr. Broome selected a target population of those who were charged by MCN for at least one add-on and expressly excluded consumers who were not charged.  Id.

The plaintiffs are correct.  As defined in Prof. Diamond's Reference Guide on Survey Research, the "target population consists of all elements (i.e., individuals or other units) whose characteristics or perceptions the survey is intended to represent." See Reference Guide on Survey Research at 376.  Dr. Broome's survey was not intended to represent consumers who were not charged for add-ons so there is no reason to include such consumers in the target population.  Even if plaintiffs were to

expand the target population as suggested the methodology would find similar results.[1]
<u>See</u> Pltf's Opp'n at 17.  The defendants' argument that Dr. Broome should have surveyed all consumers is without basis.

*                                        *                                        *

For the reasons set forth above, the defendants' arguments for preclusion are without merit.  The defendants submitted no expert testimony to support their Motion.  <u>See</u> <u>generally</u> Mot. to Preclude.  Dr. Broome's survey is designed with methodology consistent with the <u>Reference Guide on Survey Research</u> and legal precedent regarding FTC surveys.  Dr. Broome's technique used reliable survey methodology.  <u>See</u>, <u>supra</u>, Part IV.

---

[1] Dr. Broome's survey interviewed 297 of 5,553 customers who were charged for at least one add-on and found that 88% of the 297 respondents were charged for add-ons that they did not agree to or agreed to because they were led to believe they were required.  This reflects approximately 4,900 customers, 88% of the 5,553 who were allegedly charged for at least one add-on, were allegedly charged unlawfully (0.88 x 5,553 = 4,886.6).  If, instead, Dr. Broome had conducted a survey of all transactions during the same period (rather than only transactions that involved at least one add-on charge), the percentage result she obtained would have been lower (as customers who had not been charged for any add-ons would answer "no" when asked whether they had agreed to pay extra for any add-ons), but that percentage would apply to a larger population (a population of both customers who were charged for add-ons and those who were not).  A rate of allegedly unlawful charges of, for example, 70% among a population of 7,000 total transactions would—similar to Dr. Broome's findings—point to roughly 4,900 customers who were allegedly charged unlawfully (0.70 x 7,000 = 4,900).  Employing the suggestion of defendants' counsel to expand the target population in contravention of reliable survey methodology would provide no relief from Dr. Broome's opinions in support of the plaintiffs' allegation that defendants unlawfully charged nearly 5,000 customers for add-ons.  <u>See</u> Pltf's Opp'n at 17-18.

## V.    CONCLUSION

The court denies the Motion to Preclude Testimony of Dr. Jessica Broome (Doc.

No. 196).


**SO ORDERED.**

Dated at New Haven, Connecticut this 16th day of March 2026.


       /s/ Janet C. Hall
      Janet C. Hall
      United States District Judge